Mary K. TURNER, Individually and as next friend for Lena Marie Turner, and Tammy Sue Turner, and Barbara Mack, Individually and as next friend for Phillip Price, Renee Price and Doniele Troup, and all Others Similarly Situated, Plaintiffs,

v.

James F. WALSH, Individually and as Director of the Missouri Department of Social Services and Phyllis Reser, Individually and as Director of the Missouri Division of Family Services, Defendants.

No. 77–4159–CV–C.

United States District Court, W. D. Missouri, C. D.

July 25, 1977.

Shirley Allen, Stuart R. Berkowitz, St. Louis, Mo., Effie F. Day, Kansas City, Mo., for plaintiffs.

Robert R. Northcutt, Tom Fulkerson, Paul T. Keller, Div. of Family Services, Don Kammerer, Jefferson City, Mo., for defendants.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

Plaintiffs seek to represent a class of recipients of Aid to Families with Dependent Children (AFDC) whose AFDC and/or Medicaid benefits are being discontinued, terminated, suspended or reduced without adequate notice as required by federal regulation and the due process clause of the Fourteenth Amendment. Defendant Walsh, Director of the Department of Social Services of the State of Missouri, is responsible for the general administration and enforcement of the laws concerning the social welfare of the people of Missouri. See § 191.020, R.S.Mo.1969. Defendant Reser, as Director of the Missouri Division of Family Services of the Department of Social Services, is responsible for the general administration of all public welfare activities of the State of Missouri, including the enforcement of applicable statutory provisions, adoption and enforcement of welfare policies, rules and regulations, and the supervision of state and county agency practices, subject to the supervision of defendant Walsh.

In June, 1977, plaintiff Mary K. Turner received one hundred seventy dollars ($170.00) AFDC and Medicaid benefits for herself and her three minor children. She received a computerized notice from defendants, dated June 20, 1977, which stated that as of July 1, 1977, her AFDC grant would be reduced to sixty-nine dollars ($69.00) because a new state statute, § 208.-150 R.S.Mo.1977, requires a new method of determining AFDC benefits.[1] In June, 1977, plaintiff Barbara Mack received one hundred seventy-two dollars ($172.00) AFDC and Medicaid benefits for herself and her four minor children. Late in June, she received a similar computerized notice from defendants, dated June 20, 1977, which stated that her AFDC grant and Medicaid coverage would be reduced July 1, 1977, to eleven dollars ($11.00).[2] The content of these computerized notices, and the approximately 37,000 others mailed by defendants, gives rise to this action.

*Background*

The State of Missouri participates in a jointly funded federal-state AFDC program established by Title IV of the Social Security Act, 42 U.S.C. § 601 *et seq.*, and § 208.-040, R.S.Mo.1973. The AFDC program provides funds to the State for the provision of financial assistance to families in which children, for various reasons, have been deprived of the support of a parent or parents. The State of Missouri also participates in a jointly funded federal-state Medical Assistance program established by Title XIX of the Social Security Act, 42 U.S.C.

---

1. The notice provided to plaintiff Turner reads: "According to the information available to the Division of Family Services, your Social Security benefits will be increased to $.00 in July, 1977. In addition, a new state law, Section 208.150 changed the method of determining your Aid to Dependant [sic] Children benefits. Because of these two changes, your ADC grant has been adjusted.

Based on the income information we have for you as of June 13, 1977, including the above Social Security amount, your ADC grant will be $69.00 in July, 1977. If the amount shown is zero, you are no longer eligible for a cash grant or Medicaid benefits.

When you receive your Social Security check, compare the amount with the above amount. If the amount is different or if you have any questions, contact your caseworker. The caseworker must see your check to verify the correct amount before any adjustment can be made.

If you feel that this decision is not correct, you have 90 days from the date of this notice to request a hearing at your county Division of Family Services office. Any change in the amount of your ADC grant or Social Security may effect [sic] your eligibility for food stamps."

2. With variations in the amounts shown, plaintiff Mack's notice is identical to that provided plaintiff Turner.

§ 1396 et seq., and § 208.151, R.S.Mo.1973. The Medical Assistance program makes funds available for the payment of medical expenses for eligible persons to purchase necessary medical services from their own available resources. Title XIX, 42 U.S.C. § 1396a(a)(10), requires the states automatically to provide Medicaid benefits to all persons eligible for or receiving AFDC benefits under the State's AFDC Title IV plan.

The State of Missouri is obligated to operate these programs in conformity with applicable federal statutes and regulations; in return, the State receives millions of dollars annually from the United States for maintenance of the programs. Relevant portions of those federal regulations provide:

"When changes in either State or Federal law require automatic grant adjustments for classes of recipients, timely notice of such grant adjustments shall be given which shall be 'adequate' if it includes a statement of the intended action, the reasons for such intended action, a statement of the specific change in law requiring such action and a statement of the circumstances under which a hearing may be obtained and assistance continued." 45 C.F.R. § 205.10(a)(4)(iii).

45 C.F.R. § 205.10(a)(5) further provides: "An opportunity for a hearing shall be granted to any applicant who requests a hearing because his claim for financial and medical assistance is denied, or is not acted upon with reasonable promptness, and to any recipient who is aggrieved by any agency action resulting in suspension, reduction, discontinuance or termination of assistance. A hearing need not be granted when either State or Federal law require automatic grant adjustments for classes of recipients unless the reason for an individual appeal is incorrect grant computation."

Subparagraph (a)(5)(v) provides in pertinent part:

"The agency may deny or dismiss a request for a hearing where it has been withdrawn by the claimant in writing, where the sole issue is one of State or Federal law requiring automatic grant adjustments for classes of recipients."

Finally, 45 C.F.R. § 205.10(a)(6)(i)(A) provides:

"(6) If the recipient requests a hearing within the timely notice period:

(i) Assistance shall not be suspended, reduced, discontinued or terminated, (but is subject to recovery by the agency if its action is sustained), until a decision is rendered after a hearing, unless:

(A) A determination is made at the hearing that the sole issue is one of State or Federal law or policy, or change in State or Federal law and not one of incorrect grant computation."

The "timely notice period" is defined as follows in 45 C.F.R. § 205.10(a)(1)(A):

" 'Timely' means that the notice is mailed at least 10 days before the date of action, that is, the date upon which the action would become effective."

On or about July 20, 1977, defendants commenced implementation of § 208.150, R.S.Mo.1977,[3] by preparing and mailing approximately 37,000 computerized notices expressing their intention, as of July 1, 1977, to discontinue, suspend, or terminate AFDC and Medicaid benefits to 18,889 persons and to reduce AFDC benefits to another 25,885 families. While the computerized notices stated, in very general terms, that the adjustments were required by enactment of a new state law, cited that statute, and informed the recipients of their right to request a hearing within ninety days, the notice did not mention the right, under § 205.10(a)(6)(i)(A), to continuation of benefits pending a hearing if the hearing is requested within ten days of the notice.

---

**3.** § 208.150, R.S.Mo.1977, was passed by the Missouri legislature on May 24, 1977, signed by the Governor on June 8, 1977, and became effective July 1, 1977. The statute changes the method by which AFDC and Medicaid benefits are computed from a "maximum grant" method to the "percentage-of-need" method. The lawfulness of the statute is not at issue in this action.

Plaintiffs filed this action on July 12, 1977, seeking injunctive relief against defendants from taking any action whatsoever to discontinue, suspend, terminate, or reduce the AFDC and Medicaid benefits to plaintiffs and the class they represent without timely and adequate notice as required by 45 C.F.R. § 205.10(a)(4)(iii) and the due process clause of the Fourteenth Amendment and from discontinuing, suspending, terminating, or reducing benefits to plaintiffs and class members who, after receiving proper notice, request a hearing within the timely notice period provided in 45 C.F.R. § 205.10(a)(6)(i). Together with their complaint, plaintiffs filed an application for Temporary Restraining Order prohibiting any such actions by defendants pending a hearing on the motion for preliminary injunction.

Upon consideration of plaintiffs' complaint, the affidavits of plaintiffs, and the apparent fact that unless restrained, defendants would discontinue, terminate, suspend or reduce Medicaid benefits to plaintiffs and the members of the class they seek to represent, and that such action would cause immediate and irreparable injury to plaintiffs and their class by depriving them of necessary medical care, this Court entered its Temporary Restraining Order on July 12, 1977, prohibiting defendants from discontinuing, terminating, or suspending Medicaid benefits to plaintiffs and the members of their class pending disposition of plaintiffs' Motion for Preliminary Injunction, and directing that defendants provide Medicaid benefits under Title XIX only to those persons whose AFDC grants would be totally discontinued by reason of implementation of § 208.150, R.S.Mo.1977.[4] Further, upon finding that the notice previously sent by defendants was defective, the Court ordered that defendants forthwith send an additional notice to all persons to whom the previous notice was sent, informing them of their right to request a hearing within ninety days, the manner in which that hearing might be requested, and further stating that a request for hearing within ten days could result in the continuation of benefits until a hearing or decision.[5]

By separate Order entered July 12, 1977, this action was set for trial on the merits to commence at 9:30 a. m. on Wednesday, July 20, 1977. The trial commenced as scheduled; following lengthy testimony and introduction of numerous exhibits, this action was fully and finally submitted, and taken under advisement on July 20, 1977.

*The Issues*

Plaintiffs contend that the pretermination notice sent to them by defendants is defective in that it fails to state the reasons for the intended action and the specific change in law requiring the action; according to plaintiffs, the purpose of 45 C.F.R. § 205.10(a)(4)(iii) is to inform recipients in a meaningful way of the precise change in law as applied to their individual situation, and defendants' notice was not specifically tailored so as to be individually meaningful. Secondly, plaintiffs assert that the notice is defective because it fails adequately to inform recipients of their right to a hearing to contest the intended action and to obtain continued benefits pending that hearing or a determination following it. Finally, plaintiffs contend that defendants have made factual errors in computing the benefits due them, and that although plaintiffs

4. Medicaid benefits being contingent upon eligibility for ADC benefits under Title IV, see 42 U.S.C. § 1396a(a)(10), the Order was required only to continue medical care for those who otherwise would be terminated from ADC benefits; those persons who would suffer reduced ADC benefits under the new computation formula, despite a reduction in income, would retain their Medicaid eligibility.

5. Defendants' principal opposition to plaintiffs' claims in the lengthy conference held in connection with the request for Temporary Restraining Order focused on the extreme difficulty of providing relief—even assuming a judgment for plaintiffs—due to the unavailability of computer time to prepare a second notice and to restore benefits to their June levels. Accordingly, this Court deemed it necessary, in view of the extreme hardships inherent in delay of welfare benefits, that defendants begin the process of notification so as to avoid undue delay in the event of a judgment for plaintiffs on the merits.

intend to contest these actions at administrative hearings, they have been informed that they are not entitled tò a hearing or, at most, that they will not receive aid pending their hearings. Plaintiffs assert that where, as here, they assert factual inaccuracies in their grant computations and request a hearing within ten days of the notice, they are entitled to continued benefits àt least pending their hearing.

In response, defendants argue that because the reduction or termination in benefits is required by a change in state law, plaintiffs are not entitled to a pretermination hearing; defendants assert that no factual errors have been made in the grant computations and thus only a question of law or policy remains. According to defendants, plaintiffs seek not to challenge their grant computations, but to supplement or correct information which they erroneously provided or failed to provide their caseworkers, and that the fact that the computation may have been based on inaccurate or incomplete information is therefore plaintiffs' own fault, to be remedied in an expedited hearing process following reduction or termination of benefits, and does not entitle plaintiffs to continuing benefits in the interim. Finally, defendants protest that in this situation equity prohibits any Order requiring them to continue benefits to all 37,000 recipients of the previous pretermination notice pending new notification and hearing. According to defendants, such an Order would wreak havoc on the already over-burdened state welfare system and could result in non-payment of benefits to recipients of other state welfare programs.

The issues to be determined by this Court, therefore, are the following:

(1) Did the June 20, 1977, notice sent by defendants to approximately 37,000 welfare recipients comply with the requirements of applicable federal regulations and due process of law under the Fourteenth Amendment to the United States Constitution?

(2) Do the applicable federal regulations require that defendants provide continuing benefits pending hearing to recipients who claim factual inaccuracies in their computations and request a hearing within ten days of notice?

(3) Does a balancing of equities require a conclusion different than consideration of mere legalities?

*The Class Issue*

■ Pursuant to Rule 23 of the Federal Rules of Civil Procedure, plaintiffs seek to have this Court certify this case as a class action. Defendants object to class certification, contending that there are in fact no factual errors in computation of the benefits due the named plaintiffs and that they may not, therefore, represent the proposed class of welfare recipients in the State of Missouri who have had or will have their AFDC and/or Medicaid benefits discontinued, suspended, terminated or reduced by virtue of § 208.150, R.S.Mo.1977.

This Court is of the opinion that all requisites of Rule 23(b)(2), F.R.Civ.P., have been satisfied, and that this case should be certified as a class action under that provision. Plaintiffs are members of the class they seek to represent; the actions they challenge are of statewide applicability and affect every family receiving AFDC and Medicaid benefits which defendants intend to discontinue, suspend, terminate, or reduce. Plaintiffs and the members of their proposed class were sent virtually identical notices which, if defective, are defective in the same respects. Plaintiffs do not challenge the validity of § 208.150, R.S.Mo.1977, but they have challenged the factual accuracy of its implementation by defendants with respect to them. Whether or not an *actual* inaccuracy is determined to exist is a question to be resolved at a subsequent administrative hearing; in the interim, this Court ascertains no reason why plaintiffs may not fairly and adequately represent the interests of other welfare recipients who similarly may challenge the factual accuracy of defendants' computations.[6] Finally, the

6. Defendants' objection to plaintiff Barbara Mack as a class representative is illustrative.

Assuming *arguendo* defendants' position that the grant computation was correct, based upon

fact that the challenged notice was sent to approximately 37,000 families throughout the State of Missouri indicates that the requisite element of numerosity is present. Accordingly, this action may proceed as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

*The Merits*

As this Court indicated in its Temporary Restraining Order entered July 12, 1977, the June 20, 1977, notice sent by defendants to approximately 37,000 recipients of ADC and Medicaid benefits in the State of Missouri was defective.[7] According to 45 C.F.R. § 205.10(a)(4)(iii), notice of a grant adjustment required by change in state law is "adequate" if it includes "a statement of the intended action, the reasons for such intended action, a statement of the specific change in law requiring such action and *a statement of the circumstances under which a hearing may be obtained and assistance continued.*" [emphasis supplied] Defendants' June 20, 1977, notice did not meet these requirements.

■ Although plaintiffs challenge the adequacy of the notice on the basis of its failure to individualize for each recipient, the Court does not find the notice deficient in that respect. Although, admittedly, in setting forth the statement of the intended action, the reasons therefor, and the specific change in law requiring the action, the notices were identical in form and cursory in language, the essential elements of notice were present. Each recipient was informed that a new state law changed the method of determining their ADC benefits (reason for the change); that, based on information presently available, the benefits would be adjusted to a specific amount stated (statement of the intended action); and the new state law requiring the change was specified: "Section 208.150." While this brief, computerized notice may leave much to be desired in the way of detail, and its computerized, fill-in-the-blank language may indeed be confusing to some readers, it is sufficiently clear and complete to fill the minimum requirements of the regulation.

■ With respect to its "statement of the circumstances under which a hearing may be obtained and assistance continued," however, the notice clearly is deficient. In attempted satisfaction of this requirement, the notice states:

If you feel that this decision is not correct, you have 90 days from the date of this notice to request a hearing at your county Division of Family Services office. Any change in the amount of your ADC grant or Social Security may effect [sic] your eligibility for food stamps.

Unquestionably, this notice contains *no* mention of the circumstances under which assistance may be continued, and inadequately describes the circumstances under which a hearing may be obtained. No mention is made of the ten-day "timely notice period." 45 C.F.R. § 205.10(a)(1)(A). No statement is made concerning the fact that

---

information then present in plaintiff Mack's file, and that at any hearing subsequently held the announced reduction in her ADC benefits will be confirmed, the facts remain that she has challenged the accuracy of her grant computation, requested a hearing within the "timely notice period," and yet her benefits have not been continued at their June level pending that hearing. Defendants' insinuation that Mrs. Mack, who admittedly is "knowledgeable and persistent about her rights, is merely a "trouble-maker" is irrelevant. It may well be that only a very knowledgeable and persistent individual may obtain her due, in view of defendants' interpretation of applicable federal regulations and their allegedly inadequate notice concerning those rights. Because plaintiff Mack may represent the class, the facts with respect to plaintiff Turner need not be discussed.

7. Contrary to the suggestion made by counsel for defendants, the issue of adequacy of the notice previously sent has not been mooted by the Temporary Restraining Order. Although defendants apparently have exercised good faith in attempting to comply with the terms of the restraining order, the supplemental notice required therein, at the time of the trial on the merits, had been prepared but not yet mailed. Accordingly, in the event of further unavoidable delay in issuance of the supplemental notice, a finding of adequacy of the original notice is necessary.

under certain circumstances, benefits may be continued until the hearing, and that unless a determination is made *at the hearing* that the sole issue is one of State or Federal law or policy, or change in State or Federal law and not one of incorrect grant computation, the benefits continue pending a determination following the hearing. 45 C.F.R. § 205.10(a)(6)(i)(A). Thus, the June 20, 1977, notice was not "adequate" within the meaning of 45 C.F.R. § 205.10(a)(4)(iii), and the supplemental notice mandated by this Court's Temporary Restraining Order of June 12, 1977, is required.[8]

We next turn to the question of whether continuing benefits are available to recipients under these circumstances. Under the regulatory scheme, the mailing of the notice begins the "timely notice period" discussed in § 205.10(a). If a recipient requests a hearing within ninety days following notice, a hearing is granted, but benefits terminate as of the effective date of termination or reduction. Under 45 C.F.R. § 205.10(a)(6)(i)(A), however:

(6) If the recipient requests a hearing within the timely notice period:

(i) Assistance *shall not be suspended, reduced, discontinued or terminated,* (but is subject to recovery by the agency if its action is sustained), *until a decision is rendered after a hearing,* unless:

(A) A determination is made *at the hearing* that the sole issue is one of State or Federal law or policy, or change in State or Federal law and *not one of incorrect grant computation.* [emphasis supplied]

Thus, the regulations clearly contemplate that if a recipient requests a hearing within ten days of the notice, his/her benefits will continue at their present level until a decision is rendered after the hearing, unless at the time of the hearing, a determination is made that the only issue involved is one of state or federal law or policy. In that event, the benefits, having continued from the date of notice, would terminate as of the date of the hearing. In no event—given a hearing request within ten days of notice raising an alleged error in grant computation—do the regulations contemplate termination of benefits prior to the hearing.

In contrast, the evidence in this case reveals that within the timely notice period, numerous recipients who questioned their grant computations, including plaintiff Mack, were informed that they were not entitled to a hearing at all. No one has been awarded continuing benefits pending a hearing, despite a request within the timely notice period. Defendants have made clear their belief that continuing benefits under these circumstances are not warranted, and the evidence indicates that the determination as to whether or not continuing benefits should be granted, based upon whether or not a question of fact involving the grant computation is present, has been made by the *caseworker* at the time of the request for a hearing, rather than by a determination *at the hearing*, as specified by § 205.10(a)(6)(i)(A).

Clearly, defendants have failed to proceed with their grant adjustments in the manner required by law. Under the law, a new and adequate notice, followed by adherence with the regulatory procedure outlined above, should be required. Inherent in such a requirement, necessitated by defendants' failure to act properly in its first attempt to adjust grant benefits, would be defendants' continuation of all benefits at their June level pending proper completion of the adjustment procedure.[9] Only by

---

**8.** Although plaintiffs have not belabored this point, there also would appear to be at least a question as to whether the notice was "timely" within the meaning of § 205.10(a)(1)(A). The challenged reductions and terminations were scheduled to become effective July 1, 1977. The notice was *dated* June 20, 1977, and mailed on that date or after. It undoubtedly was received by 37,000 families less than ten days prior to the effective date of the termination or reduction. Plaintiffs' Exhibit 2, a memorandum from defendant Reser to all district and county welfare offices, states, "If percentage of need becomes effective July 1, 1977, these forms would need to be mailed no later than June 10, 1977."

**9.** Although the effective date of implementation of § 208.150, R.S.Mo.1977, was July 1, 1977, and the members of plaintiffs' class may

such an action could defendants assure that any and all recipients with legitimate questions concerning the factual accuracy of their grant computations would be provided the opportunity to challenge those computations without loss of the benefits which, in many instances, constitute their very means of livelihood.[10]

Defendants argue, however—and their defense at the trial of this cause consisted almost exclusively of this argument—that continuation of benefits at their June level pending new notice and hearing would be impossible without disruption of other programs and concomitant damage to the interests of other indigent and needy citizens of Missouri. According to defendants, the process of re-programming the antiquated Division of Family Services computer to identify those families whose benefits are scheduled to be suspended, terminated or reduced, and to print checks restoring their benefits to their June levels, would be extremely time-consuming. Defendants further contend that locating enough time on that computer or any other to accomplish this procedure would be nearly impossible, and that re-establishing priorities in order to accomplish this task would virtually grind to a halt other welfare programs throughout this State.

In addition, defendants argue that continuation of benefits to all 37,000 recipients of the notice would be unjust and unduly expensive; as not all 37,000 recipients can or will assert factual inaccuracies in their computations, restoring them to their June level of benefits would mean granting undeserved benefits to thousands of unqualified recipients.[11] Further, defendants assert that in implementing the percentage of

need formula in the manner found herein to be deficient, they merely acted in good faith reliance upon informal, oral guidance provided by officials of the Region VII office of the United States Department of Health, Education and Welfare, and that they should not, in effect, be penalized for their good faith actions. The evidence also reveals, however, and in setting forth this contention the Court feels compelled to point out, that defendants' "good faith reliance" upon alleged assurances of HEW was contrary to the clear reading of the applicable regulations, contrary to the clear language of the only *written* memorandum from an official of HEW on the subject [Plaintiffs' Exhibit 1], and contrary to the advice of their own counsel.

The equities thus asserted by defendants must be weighed against the threatened harm to plaintiffs in considering any equitable solution to this problem. The plaintiffs' interest in this action was clearly enunciated by the United States Supreme Court in *Goldberg v. Kelly*, 397 U.S. at 264, 90 S.Ct. at 1018:

. . . . When welfare is discontinued, only a pretermination evidentiary hearing provides the recipient with procedural due process . . . For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care . . . Thus the crucial factor in this context . . . is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediate-

---

have been physically removed from the computer rolls with respect to their June benefits, the evidence indicates that welfare benefits are payable any time within the month; thus, if ordered to do so within the month of July, defendants' action to restore benefits to their June levels would constitute a continuation of those benefits, rather than a retroactive grant. See *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Milliken v. Bradley,* —— U.S. ——, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977).

**10.** As the United States Supreme Court recognized in *Goldberg v. Kelly,* 397 U.S. 254, 266, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the State has a strong interest that welfare recipients not be erroneously terminated. See also *Provost v. Betit,* 326 F.Supp. 920, 924 (D.Vt.1971).

**11.** In support of this contention, defendants point out that the 37,000 original notices have to date resulted in only 200 hearing requests. Given the defective nature of that notice, however, this figure may not be probative.

ly desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy. [Footnote omitted.]

In similar cases, the courts have granted class-wide relief enjoining state welfare officials from termination or reduction of welfare benefits pending pretermination notice and hearing, despite similar equitable arguments by defendants. See *Yee-Litt v. Richardson,* 353 F.Supp. 996 (N.D.Cal.1973), aff'd, 412 U.S. 924, 93 S.Ct. 2753, 37 L.Ed.2d 152 (1973); *Viverito v. Smith,* 421 F.Supp. 1305 (S.D.N.Y.1976); see also *Cardinale v. Mathews,* 399 F.Supp. 1163 (D.D.C.1975); *Mothers' and Children's Rights Organization v. Sterrett,* 467 F.2d 797 (7th Cir. 1972); *Lyons v. Weinberger,* 376 F.Supp. 248 (S.D. N.Y.1974); *Provost v. Betit,* 326 F.Supp. 920 (D.Vt.1971); *Merriweather v. Burson,* 325 F.Supp. 709 (D.Ga.1970); *Brown v. Wohlgemuth,* 371 F.Supp. 1035, aff'd, 492 F.2d 1238 (3d Cir. 1974); *Brower v. Wohlgemuth,* 371 F.Supp. 863 (E.D.Pa.1974).

█ Thus, as plaintiffs argue, the Courts have recognized that even in across-the-board adjustments necessitated by a change in law, some mistakes are inevitable, and the obvious and irreparable injury which occurs when there is an erroneous termination or reduction can only be prevented where, as contemplated by the regulations herein, the State is required ". . . to pay aid pending in all cases where timely appeals are filed" from a proper notice. *Yee-Litt v. Richardson,* 353 F.Supp. at 999. The precautions necessary in this sensitive area are not unlike those which form the basis of our system of criminal justice in this country: our Constitution and laws provide safeguards in pursuit of which we willingly acquit an occasional guilty man in order that we not unwittingly convict a single innocent man.

The Court, long accustomed to laboring under the heavy docket which now has become only too routine for our over-burdened federal judiciary, is not unsympathetic with defendants' protest that their agency's computer already operates at "110 percent capacity." Nevertheless, under the circumstances presented herein, defendants' error is undisputably clear, as is their burden to correct and prevent future tragic results of that error. The Court is further convinced from the evidence adduced herein that defendants may issue the supplementary notice and continue benefits at their June levels pending that notice and any appropriate hearing requests which result therefrom, without unwarranted or similarly tragic effects on other programs.[12] Under the circumstances presented herein, a Herculean effort to correct a tragic error is only simple justice.

For the foregoing reasons, therefore, it is hereby

ORDERED that defendants, their successors in office, agents and employees and all other persons in active concert and participation with them through the Division of Family Services of the State of Missouri be, and they are hereby, forever and permanently enjoined from discontinuing, suspending, terminating or reducing AFDC and/or Medicaid benefits to plaintiffs and the members of the class they represent without timely and adequate notice as required by 45 C.F.R. § 205.10(a)(4)(iii) and the due process clause of the Fourteenth Amendment to the United States Constitution, and it is further

---

12. According to the testimony of defendants' witnesses, approximately seven days' programming time (based upon an average eight-hour day) and 45–50 hours computer time, would be required to restore the June level of benefits to the 37,000 recipients of the notice. Defendants still possess the system which was used to send out the original notice and the State's computers run 22 hours per day, 7 days per week. Computer time may be purchased on computers available in private industry. One program currently occupying both programming and computer time is that which provides reimbursements to vendors under the Title XIX program—hospitals. Perhaps, in re-establishing priorities in order to comply with their duty in this instance, defendants may be able to identify those "immediately desperate", see *Goldberg v. Kelly, supra,* situations such as the one at bar from other, more routine, matters requiring staff and computer attention.

ORDERED that defendants, their successors in office, agents and employees and all other persons in active concert and participation with them through the Division of Family Services of the State of Missouri be, and they are hereby, forever and permanently enjoined from discontinuing, suspending, terminating, or reducing AFDC and/or Medicaid benefits to plaintiffs and the members of their class who, after receiving proper notice, request a hearing within the timely notice period provided in 45 C.F.R. § 205.10(a)(6)(i), except in accordance with the provisions of 45 C.F.R. § 205.10(a)(6)(i)(A), as discussed herein; and it is further

ORDERED that defendants shall forthwith take whatever actions necessary to continue for the month of July, 1977, AFDC and Medicaid benefits to plaintiffs and members of their class which they enjoyed in the month of June 1977.[13]

**13.** Defendants' Motion to Dismiss is hereby denied. The Court further notes that in reaching its determination herein it neither read nor considered the affidavits submitted by Julia F. Yates, Leola Williams, Pat Wilkinson, Brenda Vaughn, Ann Thornton, Alice Singleton, Johnnie Mae Short, Judy Ann Reyes, Georgia Mae Johnson, Nancy Hulett, Lorna Brown, Mae Baker, and Evelina Anderson, nor considered the testimony of Lorna Baker.