**MINNESOTA RECIPIENTS ALLIANCE, et al., Plaintiffs,**

v.

**Arthur E. NOOT, et al., Defendants and Third Party Plaintiffs,**

v.

**Richard D. SCHWEIKER, et al., Third Party Defendants.**

**Civ. No. 4–81–658.**

United States District Court, D. Minnesota, Fourth Division.

Oct. 29, 1981.

Legal Aid Society of Minneapolis by Michael R. Fargione, Minneapolis, Minn., for plaintiffs.

Warren Spannaus, Atty. Gen., State of Minn., by Beverly Jones Heydinger, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendants and third party plaintiffs.

Linda L. Cromwell, Atty., Dept. of Justice, Civ. Div., Washington, D. C., for third party defendants.

## MEMORANDUM OPINION AND ORDER FOR PRELIMINARY INJUNCTION

MILES W. LORD, Chief Judge.

The plaintiffs brought this action to enjoin the defendant Noot from implementing two provisions of the Omnibus Budget Reconciliation Act, P.L. 97–35 (hereinafter P.L. 97–35) relating to AFDC benefits. The plaintiffs claim that these two provisions conflict with state law and, therefore, by the terms of P.L. 97–35 § 2321 the federal provisions do not become effective until after the state legislature has had an opportunity to meet and consider the federal law changes.[1] The plaintiffs represent a large group of people whose AFDC benefits have been denied, reduced, or terminated as a result of the defendant Noot's October 1, 1981, implementation of these two provisions of P.L. 97–35.

The plaintiffs' cause was begun in state court. The plaintiffs' motion for a preliminary injunction was summarily denied by the state court. *Minnesota Recipients Alliance v. Noot*, No. 783348 (Henn. County Dist. Court, filed Sept. 29, 1981). The plaintiffs appealed the denial of the injunction to the Minnesota Supreme Court. The Minnesota Supreme Court agreed to hear the arguments for appeal and set the hearing for October 15, 1981. However, the defendant Noot moved to join the defendant Schweiker; the defendant Schweiker agreed to the joinder and on September 28, 1981, the state court granted the motion for joinder. On October 8, 1981, the defendant Schweiker removed the action to this Court pursuant to 28 U.S.C. § 1442 before the Minnesota Supreme Court could hear the appeal.

For the reasons stated below, this Court grants the plaintiffs' motion for a preliminary injunction and certifies the state law questions involved to the Minnesota Supreme Court pursuant to Minn.Stat. § 480.-061 (1980).

The plaintiffs' motion for a preliminary injunction is based on state law issues, i. e., the proper interpretation of Minn.Stat. §§ 256.73, Subd. 6, and 256.74, Subd. 1 (1980). Specifically, the plaintiffs claim that these state statutes conflict with P.L. 97–35 § 2301, and therefore, P.L. 97–35 § 2301 is not effective as the law until the state legislature meets to consider changing the state law. (See footnote 1 *supra*.)

P.L. 97–35 § 2301 relates to the calculation of work expenses for AFDC recipients and the application of the AFDC work incentive. P.L. 97–35 § 2301 provides that work expenses shall not be allowed as disregards from earned income if they exceed $75 per month, and child care expenses shall not be allowed if they exceed $160 per child. (The amount of earned income affects the amount of the AFDC grant.) Further this section provides that the AFDC work incen-

1. P.L. 97–35 § 2321 provides,

   Sec. 2321. (a) Except as otherwise specifically provided in the preceding sections of this chapter or in subsection (b), the provisions of this chapter and the amendments and repeals made by this chapter shall become effective on October 1, 1981.

   (b) *If a State agency administering a plan approved under part A of title IV of the Social Security Act demonstrates, to the satisfaction of the Secretary of Health and Human Services, that it cannot, by reason of State law, comply with the requirements of* *an amendment made by this chapter to which the effective date specified in subsection (a) applies, the Secretary may prescribe that, in the case of such State, the amendment will become effective beginning with the first month beginning after the close of the first session of such State's legislature ending on or after October 1, 1981.* For purposes of the preceding sentence, the term "session of a State's legislature" includes any regular, special, budget, or other session of a State legislature. (Emphasis Added.)

tive (another disregard from earned income) shall be calculated with reference to *net* rather than *gross* income. Because the work incentive is basically a "percentage" calculation, the application of the incentive to net income rather than gross produces a smaller disregarded amount.

Prior to October 1, 1981, the defendant Noot allowed actual work expenses and applied the work incentive to gross income. On October 1, 1981, the defendant Noot implemented the changes (noted above) outlined in P.L. 97–35 § 2301. These changes had a substantial impact on AFDC recipients. In Hennepin County alone, approximately 3,900 families had their AFDC benefits either reduced or terminated because of these changes. Affidavits filed with this Court indicate that many women who have been working, raising minor children, will now have inadequate funds to pay for food and shelter. One mother of a six year old whose grant is being terminated because of these changes has no money left after paying her *actual* work expenses, rent and utilities. Another mother of four whose grant is being reduced will have only $20 of income left after paying her rent.

All families whose grants are being terminated will also automatically lose Medical Assistance benefits for their children. These reductions and terminations do not result from the family having more resources available, but result solely from the changes in the calculations mentioned above. In fact, the affidavits reveal that money which has been spent on work expenses is being counted as though it were available to pay for the subsistence needs of dependent children. The defendant Noot has stated in a newspaper interview that these changes will encourage working AFDC mothers to quit their jobs in order to maximize or retain AFDC benefits.

As stated above, the plaintiffs claim that the state law conflicts with these federal law provisions and thus the federal provisions may not be implemented until after the State Legislature meets. On the merits of their claim concerning work expenses, the plaintiffs make two arguments. First,

the plaintiffs rely upon Minn.Stat. § 256.74, Subd. 1 (1980) which provides in part that the amount of an AFDC grant "shall · be determined with due regard to the resources and necessary expenditures of the family . . ." In analyzing this statute, the plaintiffs rely upon the reasoning in *Shea v. Vialpando*, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974) in which the Supreme Court interpreted a federal statute requiring a state to "take into consideration" income and resources as well as work expenses in calculating AFDC grants. In *Shea*, the Court held that the phrase "take into consideration" should be read to require the disregard of all reasonable work expenses. By imposing a maximum deduction of $30 per month, the Court held a state would violate the law. The plaintiffs contend that the "due regard" language of the state statute involved here should be interpreted similarly to require consideration of reasonable work expenses and not a flat $75.

In a second legal argument concerning the disregard of work expenses, the plaintiffs rely upon Minn.Stat. § 256.73, Subd. 6 (1980), a 1977 statute which incorporates by reference income disregards of the Social Security Act. At the time of the state law's enactment in 1977, the Social Security Act contained a mandatory disregard of *all work expenses* as required by *Shea v. Vialpando, supra*. The plaintiffs contend that as a general rule, a state statute incorporating standards of the Social Security Act by reference does not include subsequent modifications of the federal law, unless the state legislature expressly so declares. *See* Anno., 169 A.L.R. 627; 73 Am.Jur.2d Statutes, § 29.

The plaintiffs' argument regarding the work incentive is that the state statute, Minn.Stat. § 256.74, Subd. 1(3) contains language which follows that enacted by Congress in 1968 and codified as 42 U.S.C. § 602(a)(8). The plaintiffs argue that for over a decade both the state and federal law have been taken to require that the disregard of "the first $30 plus one-third of the remainder" be calculated with reference

to gross income. The plaintiffs contend that the established meaning of state law does not automatically change when a comparable federal law is amended. Rather, they contend, the state law must be similarly amended.

The defendant Noot argues that the "due regard" language of Minn.Stat. § 256.74, Subd. 1 (1980) does not compel any one set of deductions of work expenses from earned income, but allows him to determine allowable deductions (apparently) with reference to federal law. Further, he argues that the reference to federal law in Minn.Stat. § 256.73, Subd. 6 (1980) and the similarity of Minn.Stat. § 256.74, Subd. 1(3) to a specific federal law do not compel him to follow the federal law in effect when these statutes were passed, but rather allow him to follow the federal law in effect at any given time.

The defendant Noot points to *Wallace v. Commissioner of Taxation*, 289 Minn. 220, 184 N.W.2d 588 (1971) for the proposition that the state legislature may adopt, by reference, federal law as it exists now as well as any future modifications "to achieve uniformity in implementation of national programs and policies." 184 N.W.2d at 592. The defendant Noot argues that since AFDC is a joint federal-state program, it is appropriate for Minnesota to adopt both existing and prospective federal standards. *See, State v. Hotel Bar Foods*, 18 N.J. 115, 112 A.2d 726 (1955); *Peppers v. McKenna*, 81 F.R.D. 361 (N.D.Ohio 1977); *Ex Parte Lasswell*, 1 Cal.App.2d 183, 36 P.2d 678 (1934).

The plaintiffs also point to *Wallace, supra*, arguing that:

[i]n considering the issue of whether a change in Federal law may alter the force and effect of provisions in a prior state law governing the same subject, it may be said that the principle which controls is that a state legislature may not delegate its legislative powers to any outside agency, including the Congress of the United States.

184 N.W.2d at 591. Thus, the plaintiffs conclude that the defendant Noot's argument that the State Legislature adopted both existing and prospective federal standards is unpersuasive.

While this Court agrees with the defendant Noot that in some instances it may be appropriate for a state to adopt both existing and prospective federal standards, this Court will not *assume* that a legislature so intended to adopt prospective standards. The guiding principle under Minnesota law is that the legislature may not adopt prospective federal standards. *Wallace, supra*. If, however, this is a case where Minnesota allows such an adoption to achieve uniformity of national policies or programs, there is still nothing in the language of the statutes which suggests that the Legislature intended to do so.

All of these state statutes involved have been interpreted for quite some time as being consistent with the former federal law. Congress must amend its statutes to change the federal law, the states must ordinarily do the same to change their statutes. It should be noted here that this is not a case where an inconsistent state law must yield to an Act of Congress under the Supremacy Clause. Congress has specifically given state legislatures an opportunity to consider the federal changes in light of existing state law by postponing the effective date of any of the provisions of the federal law which conflict with state law. (*See* footnote # 1, *supra*.)

The defendant Noot argues that the issuance of the preliminary injunction will "cost" the State $102,000 per month. However, the evidence indicates that this $102,000 is money which has already been appropriated by the Minnesota Legislature. In reality then, the $102,000 would merely be an added bonus to the State to help cure its well publicized budget problems but is in no sense an "added cost."

This Court is not insensitive to the administrative burdens of compliance with an injunction requiring a continuation of Octo-

ber benefits at the September level[2] after the defendant Noot has informed the county welfare agencies that a new policy was effective October 1. However, the burden placed on these AFDC recipients and their children if the injunction does not issue is far greater. If the injunction issues, all the defendant Noot need do is apply to the defendant Schweiker for an extension of time to implement the federal law.[3] *See,* P.L. 97–35 § 2321(b). If the injunction does not issue, these AFDC recipients have no alternatives. The AFDC benefits are the plaintiffs' last resort to meet their brutal needs. *See, Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

■ Based on the arguments presented by the parties, this Court finds that the plaintiffs have demonstrated a substantial likelihood of success on the merits of their claim. Coupling this with the irreparable harm to be suffered by these AFDC recipients and their children if the injunction is not issued while this controversy is resolved, this Court is compelled to issue the preliminary injunction. *Dataphase Systems, Inc. v. C. L. Systems, Inc.,* 640 F.2d 109 (8th Cir. 1981).

■ Since this controversy may be resolved by a complete judicial analysis of the state statutes involved, and since the Minnesota Supreme Court has never had the opportunity to construe these statutes, this Court will certify the interpretation of these statutes to the Minnesota Supreme Court pursuant to Minn.Stat. § 480.061 (1980).

NOW, THEREFORE, IT IS ORDERED:

1. The plaintiffs, for purposes of this preliminary injunction, may proceed under Rule 23 of the Rules of Civil Procedure on behalf of persons with dependent children whose AFDC benefits for October and subsequent months are reduced, terminated, or denied on the basis of income disregard policies announced in Minnesota Department of Public Welfare Instructional Bulletin # 81–62, Attachment B, which policies (1) deny a disregard of actual work expenses, including child care, and (2) apply the monthly disregard of $30 plus one-third of the remainder to net rather than gross earned income.

2. The state defendants, their successors in office, agents and employees and other persons in active concert with them in administering the AFDC program in Minnesota are hereby enjoined from reducing, terminating, or denying AFDC benefits to otherwise eligible individuals by denying those persons a disregard of all actual work expenses in assessing net earned income or by applying the monthly disregard of "the first $30 plus one-third of the remainder" to net rather than gross earned income. The defendants are to comply with the terms of this injunction by returning to those procedures, required by Minnesota Department of Public Welfare Rule 44 (12 MCAR § 2.044), for assessing earned income prior to October 1, 1981.

3. This preliminary injunction will remain in effect until the month following the formal close of the next session of the Minnesota Legislature, unless otherwise modified by this Court.

---

2. This Court is not, by issuing this injunction, providing retroactive relief from the state treasury contrary to the Eleventh Amendment. Although October AFDC benefits have already been calculated on October 1, a recalculation, ordered in October is merely a continuation of benefits. *Turner v. Walsh,* 435 F.Supp. 707, 715 fn. 9 (W.D.Mo.1977). Although AFDC grants are generally paid on the first of the month, they may be paid or supplemented at any time during the month. *See, Id., Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

3. The defendant Noot, in a letter dated September 1, 1981, informed the defendant Schweiker that six provisions of P.L. 97–35 would conflict with existing state law. The defendant Noot asked that the defendant Schweiker establish a new effective date for these provisions. As of October 22, the defendant Schweiker had not yet informed the defendant Noot as to whether or not the defendant Schweiker was satisfied that state law did prevent compliance with the six provisions of P.L. 97–35. Nevertheless, the defendant Noot did not implement these six provisions of P.L. 97–35 in Minnesota on October 1, 1981.

## CERTIFICATION ORDER

Pursuant to the Uniform Certification of Questions of Law Act, Minn.Stat. § 480.061 et seq. (1980), this Court certifies the following questions of law which may be determinative of the claims now pending before this Court.

### I. *Relevant Facts and Nature of The Controversy.*

This case involves the proper computation of earned income when determining eligibility of a family for Aid to Families with Dependent Children.

Prior to October 1, 1981, the Minnesota Department of Public Welfare computed net earned income by disregarding all expenses reasonably attributable to the earning of income. This was required by federal law. *See Shea v. Vialpando*, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974).

Prior to October 1, 1981, the Minnesota Department of Public Welfare computed the AFDC work incentive by disregarding the first $30 of earned income and one-third of the remainder. This calculation was based upon gross earned income, before the deduction of any work expenses. This work incentive was required by federal law. *See Engelman v. Amos*, 404 U.S. 23, 92 S.Ct. 181, 30 L.Ed.2d 143 (1971), affirming *X v. McCorkle*, 333 F.Supp. 1109 (D.N.J.1970).

The federal law governing the disregard of work expenses, 42 U.S.C. § 602(a)(7), and the federal law governing the work incentive disregard, 42 U.S.C. § 602(a)(8), have been amended by the Omnibus Budget Reconciliation Act of 1981, P.L. 97–35. Section 2301 of the Reconciliation Act permits maximum deductions of $160 per child for child care expenses and $75 for all other work expenses (e. g., federal and state income taxes, social security taxes, union dues, transportation costs, etc.). Section 2301 of the Reconciliation Act further provides that the work incentive deduction of "$30 plus one-third of the remainder" will be calculated on the basis of net income rather than gross income.

The effective date of these federal law changes is governed by § 2321 of the Reconciliation Act. October 1, 1981, is the effective date except in cases where a state cannot comply with the new federal statute by reason of existing state law.

If there is a conflict between state law and a provision of the Reconciliation Act, the Secretary of Health and Human Services may prescribe an effective date for the federal law beginning with the month following the end of the next state legislative session.

The Minnesota Department of Public Welfare determined that six provisions of the Omnibus Budget Reconciliation Act did conflict with existing Minnesota law. On September 1, 1981, Commissioner Noot wrote to the federal agency informing the Secretary of Health and Human Services of the conflicts. On September 11, in issuing Instructional Bulletin # 81–62 to local welfare agencies in Minnesota, Commissioner Noot instructed the local agencies not to implement those six provisions of federal law which, in the Commissioner's judgment, would conflict with existing state law.

It is the intent of Congress, as expressed in P.L. 97–35, § 2321, that the provisions of Title XXIII governing AFDC not be implemented if they conflict with existing state law until such time as the State Legislature has the opportunity to bring state law into compliance with the new federal statute. This intention has been realized with respect to six provisions of the federal law which were not put into effect in Minnesota on October 1 because a conflict with state law was acknowledged.

The issue in this lawsuit is whether or not there are two additional conflicts between the provisions of Title XXIII of the Omnibus Budget Reconciliation Act and the provisions of Minnesota law.

With regard to work expenses, plaintiffs assert that Minn.Stat. § 256.73, Subd. 6 requires the welfare department to disregard actual work expenses when assessing "net earned income" for AFDC. The defendant Department of Public Welfare argues that the state law is consistent with its new policy of disregarding a maximum of

$160 per child for child care and a maximum of $75 for all other work expenses, even though actual work expenses may exceed these limits.

In an additional argument with regard to work expenses, the plaintiffs assert that Minn.Stat. § 256.74, Subd. 1 requires the welfare department to disregard actual work expenses when computing the amount of assistance to be granted to an AFDC recipient. The defendant Department of Public Welfare again responds that this state statute is consistent with the policy of disregarding a maximum of $160 per child for child care expenses and a minimum of $75 for all other work expenses, even though necessary work expenses may exceed these limits.

With regard to the work incentive, plaintiffs assert that Minn.Stat. § 256.74, Subd. 1 requires that the welfare department calculate the deduction of "the first $30 plus one-third of the remainder" of earned income on the basis of gross income. The defendant Department of Public Welfare argues that the state law is consistent with a policy which first deducts allowable work expenses ($75) and child care costs ($160) and then deducts "the first $30 plus one-third of the remainder" from net earned income.

The proper interpretation of the state law here at issue may resolve the dispute in this action, and the questions stated above are hereby certified to the Minnesota Supreme Court. This Order shall be forwarded to the Minnesota Supreme Court by the clerk under official seal.

Because this action was pending in the Minnesota Supreme Court prior to its removal on October 8, 1981, the record in this action has already been filed with the Minnesota Supreme Court in its docket 81–1031.

## II.  *Questions of Law.*

A.  Minn.Stat. § 256.73, Subd. 6, reads in part: "All net earned or unearned income not specifically disregarded by the social security act, the code of federal regulations, or state law, rules and regulations, shall be income applicable to the budgetary needs of the family."

1.  Is this statute consistent with a policy under which deductions for work expenses are limited to $160 per child for child care and to $75 for all other work expenses (regardless of the actual amount of work expenses) in the calculation of AFDC benefits?

B.  Minn.Stat. § 256.74, Subd. 1 states in part:

the amount which shall be granted to or on behalf of any dependent child and mother.... shall be determined by the county agency with due regard to the resources and necessary expenditures of the family ... and shall be sufficient, when added to all other income and support available to the child, to provide such child with a reasonable subsistence compatible with decency and health.

1.  Does this statute require the Department of Public Welfare to deduct all reasonable actual work expenses incurred by a family to produce income or may it limit work expenses to $160 for child care and to $75 for all other work expenses even if child care expenses and other work expenses exceed these limits?

C.  Minn.Stat. § 256.74, Subd. 1 states in part, "in making its determination the county agency shall exclude the following from family income: ... (3) the first $30 plus one-third of the remainder of the combined monthly earnings of any dependent child...."

1.  Does this statute permit the Minnesota Department of Public Welfare to calculate the "one-third of the remainder" with reference to net rather than gross income?