**Fredericker SHERRILL et al., Plaintiffs,**

**v.**

**David FREEMAN et al., Defendants.**

**No. 79 4155 CV C.**

United States District Court,
W. D. Missouri, C. D.

July 27, 1979.

Stuart R. Berkowitz, Richard D. Chase, Legal Services of Eastern Mo., Inc., St. Louis, Mo., for plaintiffs.

D. B. Kammerer, Dept. of Social Services, Jefferson City, Mo., for defendants.

## OPINION AND ORDER

ELMO B. HUNTER, District Judge.

Plaintiffs seek to represent a class of recipients of Aid to Families with Dependent Children (AFDC) who are allegedly being threatened with reduction, termination or suspension of their AFDC and Medicaid benefits. Plaintiffs allege that defendants intend to reduce, terminate or suspend such benefits without adequate notice and opportunity for hearing as required by federal regulation and the due process clause of the fourteenth amendment.

Defendant David Freeman is the Director of the Department of Social Services of the State of Missouri. The Department is responsible for the general administration and enforcement of the laws concerning the social welfare of the people of the State of Missouri. Defendant Freeman is designated as the chief administrative officer of the Department of Social Services and is charged with the ultimate control and administration of the Department. Defendant John Zumwalt is the Director of the Missouri Division of Family Services. The Division is responsible for the administration of all public welfare programs in the State of Missouri, including the enforcement of applicable statutory provisions and adoption and enforcement of state-wide policies. Defendant Zumwalt is designated as the chief administrative officer in the Division, subject to the supervision of defendant Freeman.

The State of Missouri participates in the jointly funded federal-state AFDC program established by Title IV of the Social Security Act, 42 U.S.C. § 601, *et seq.*, and § 208.040, RSMo, and the Medical Assistance program established by Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, and § 208.151, RSMo. The AFDC program provides funds to the State for the provision of financial assistance to families in which children, for various reasons, have been deprived of the support of a parent or parents. Approximately 62,000 Missouri

families presently receive AFDC benefits. The Medical Assistance program makes funds available for the payment of medical expenses for persons who, for various reasons, are unable to purchase necessary medical services from their own available resources. Title XIX of the Social Security Act, 42 U.S.C. § 1396a(a)(10), requires the states to provide automatically Medicaid benefits to all persons eligible for or receiving AFDC benefits under the state's AFDC Title IV plan.

The State of Missouri is obligated to operate these programs in conformity with applicable federal statutes and regulations. Relevant portions of those federal regulations follow. 45 C.F.R. § 205.10(a)(3) provides:

> Every applicant or recipient shall be informed in writing at the time of application and at the time of any action affecting his claim:
>> (i) Of his right to a hearing, as provided in paragraph (a)(5) of this section;
>> (ii) Of the method by which he may obtain a hearing;
>> (iii) That he may be represented by an authorized representative, such as legal counsel, relative, friend, or other spokesman, or he may represent himself.

45 C.F.R. § 205.10(a)(4) provides:

> In cases of intended action to discontinue, terminate, suspend or reduce assistance:
>> (i) The State or local agency shall give timely and adequate notice, except as provided for in paragraphs (a)(4)(ii), (iii), or (iv) of this section. Under this requirement:
>>> (A) "Timely" means that the notice is mailed at least 10 days before the date of action, that is, the date upon which the action would become effective; . . .

. . . . .

1. Section 208.150.1(1)(a), RSMo, provides:

The division of family services from time to time shall determine by regulation the average need for each such eligible person, and shall pay, on a uniform basis, the highest

>> (iii) When changes in either State or Federal law require automatic grant adjustments for classes of recipients, timely notice shall be given which shall be "adequate" if it contains a statement of the intended action, the reasons for such intended action, a statement of the specific change in law requiring such action and a statement of the circumstances under which a hearing may be obtained and assistance continued.

45 C.F.R. § 205.10(a)(6) provides:

> If the recipient requests a hearing within the timely notice period:
>> (i) Assistance shall not be suspended, reduced, discontinued or terminated, (but is subject to recovery by the agency if its action is sustained), until a decision is rendered after a hearing, unless:
>>> (A) A determination is made *at the hearing* that the sole issue is one of State or Federal law and not one of incorrect grant computation; . . . (emphasis added)

In Missouri, AFDC benefits are paid at the level of a fixed percentage of a previously determined "standard of need."[1] The consolidated standard of need for a family of two is $250.00 per month. Prior to July 1, 1979, Missouri AFDC benefits were calculated based on seventy percent of need. Plaintiffs Sherrill and Roloff, each with one minor child, received AFDC grants for June, 1979, based on seventy percent of need, in the amount of $175.00.

During the 1979 session of the 80th General Assembly, the Missouri legislature passed an appropriations measure known as House Bill No. 9, which appropriated funds for operation of the Missouri Department of Social Services. Section 9.425 of House Bill No. 9 appropriated funds for the payment of AFDC benefits at a level of *seventy-five* percent of need.[2] The parties have stipulat-

percent of such need as shall be possible within the limits of funds appropriated for that purpose, . . .

2. Conference Committee Substitute for House Bill No. 9, § 9.425 provides:

ed that defendants had to select a percentage of need in June, 1979, upon which to base the July, 1979, AFDC grant in order to insure that the July grant would be issued on or about July 1, 1979. Benefit checks for the July grant were prepared on or about June 20, 1979, based on *seventy-five* percent of need as reflected in House Bill No. 9. On June 29, 1979, the Honorable Joseph P. Teasdale, Governor of the State of Missouri, vetoed House Bill No. 9 by changing the level of AFDC benefits provided in section 9.425 from *seventy-five* percent of need to *seventy-four* percent of need.[3]

Defendant Zumwalt testified that defendants received notice of the Governor's veto at 1:50 p. m., Friday, June 29, 1979. There was testimony that if the July benefit checks were to be recalculated at the *seventy-four* percent of need level and prepared a second time, the resulting delay would mean that AFDC recipients would not receive their July benefit checks until July 7, or July 9.[4] Defendant Zumwalt testified that defendants' objective was to get the checks out as fast as possible, and therefore a decision was made to send out the checks that had already been prepared at the *seventy-five* percent level. On or about Monday, July 2, 1979, the Division of Family Services mailed July benefit checks to all Missouri recipients of AFDC based upon a *seventy-five* percent of need level.

Included with each benefit check was the following notice:

### IMPORTANT NOTICE

Due to technical difficulties the enclosed AFDC check is based on a payment level that is higher than the percentage approved. Rather than delay your check for July and create a financial hardship we are sending you the enclosed check. We will then make an adjustment on your August check. As a result your August check will be slightly smaller than the check enclosed. If you do not agree with this decision you have the right to a fair hearing. You also have the right to be represented by an attorney or by other persons who have knowledge of your situation. You have the right to present witnesses in your behalf and to question witnesses who appear at the request of the Division of Family Services. If you agree with this decision you do not have to request a hearing.

John Zumwalt, Director
DIVISION OF FAMILY SERVICES

Plaintiffs Sherrill and Roloff each received $188.00 in AFDC benefits in July, 1979, which is *seventy-five* percent of the Missouri consolidated standard of need. Plaintiffs also each received a copy of the above "Important Notice." The parties have stipulated that *seventy-four* percent of the standard of need is $185.00.

At the time of the July 25, 1979, hearing of this cause, the AFDC benefit checks for August, 1979, to be mailed on or about August 1, 1979, had already been prepared. These checks were prepared to reflect a benefit level of *seventy-four* percent of need, corresponding to the appropriation of funds for this purpose signed into law by Governor Teasdale on June 29, 1979. Defendant Zumwalt testified that AFDC benefits would be paid out for August and the remainder of the fiscal year at the *seventy-four* percent level.

■ Plaintiffs seek to have this case certified as a class action pursuant to F.R. Civ.P. 23 and would define the class as all

To the Department of Social Services for the Division of Family Services for the payment of aid to families with dependent children benefits at a level of seventy-five percent of need as determined by standards of the Division of Family Services as of June 1, 1977 . . . .

**3.** Veto Message of Honorable Joseph P. Teasdale (June 29, 1979) provides in part:

I also veto this section as follows: . . . Section 9.425 . . . I also veto the language of this section to change the words "of seventy-five percent" to "of seventy-four percent." This will allow a 6% cost-of-living increase for ADC recipients identical to the increase which state employees will receive.

**4.** Testimony of Frank George, Division of Finance, Missouri Department of Social Services.

Missouri recipients of Aid to Families with Dependent Children who have had or will have their AFDC benefits adjusted (excluding those proposed to be terminated) by virtue of section 9.425 of House Bill No. 9 and Governor Teasdale's veto message of June 29, 1979.[5] The Court is of the opinion that all requirements of F.R.Civ.P. 23 are satisfied, and that this case should be certified as a class action under F.R.Civ.P. 23(b)(2). Plaintiffs are members of the class they seek to represent; the class contains approximately 62,000 members, so numerous that joinder of all members is impracticable; the notice, if required and if defective, is required for all class members and is defective in the same respects; plaintiffs' claim to adequate notice and continuing benefits is typical of the claims of class members; and there is no reason apparent to the Court why plaintiffs do not fairly and adequately represent the interests of class members. Additionally, defendants have acted on grounds generally applicable to the class as a whole. Accordingly, this case may proceed as a class action pursuant to F.R.Civ.P. 23(b)(2).

Plaintiffs contend that the notice sent to them by defendants does not comply with the requirements of 45 C.F.R. § 205.-10(a)(4)(iii) in several respects.[6] Therefore, say plaintiffs, defendants are required to send out a new notice of intended action, *prior to the mailing of any checks calculated at the seventy-four percent of need level,* which notice is "adequate" under that regulation. Applicable federal regulations would require that such notice of intended action be "timely," *i. e.,* mailed ten days before the date of action, in this case the date of mailing of any benefit check at the *seventy-four* percent level. 45 C.F.R.

§ 205.10(a)(4)(i)(A). Plaintiffs argue that the regulations also require that AFDC benefits be maintained at the *seventy-five* percent of need level of the July checks, pending any hearing, for any recipient who requests a hearing within the ten day period beginning with the mailing of the new, "adequate" notice. 45 C.F.R. § 205.-10(a)(6)(i)(A). Defendants concede that if 45 C.F.R. § 205.10(a)(4) applies to their intended action of mailing out AFDC benefit checks for August at the *seventy-four* percent of need level, the notice sent to recipients with the July checks is not "adequate" under the regulation. The issue to be determined in this action, therefore, is whether the regulation applies.

The regulation applies only to cases of intended action to discontinue, terminate, suspend or reduce assistance. It is plaintiffs' contention that payment of the August AFDC benefits at the *seventy-four* percent would be a reduction within the meaning of the regulation. Plaintiffs argue that the mailing out of the July checks at the *seventy-five* percent level established the level of assistance at *seventy-five* percent of need, notwithstanding the enclosed notice that the checks were based on a payment level higher that that actually approved. The "reduction" in plaintiffs' theory is defendants' adjustment of the amount of each benefit check for August to reflect the *seventy-four* percent of need level which became law on June 29, 1979. The *seventy-five* percent of need level reflected in the July checks was never the legal assistance level and was paid out to AFDC recipients only as an accommodation by defendants, in an effort to avoid the hardship which might result if the July checks were delayed in order to prepare them at the

---

5. The parties have stipulated that two categories of AFDC recipients are not members of the class: (1) 554 AFDC recipients who received increased social security benefits in July, 1979, and were sent a different notice of adjustment of AFDC benefits; (2) 33 AFDC recipients who will not be eligible for AFDC benefits as of August 1, 1979, and received a different notice than that at issue in this case.

6. Plaintiffs state that the notice failed to inform them of the intended action because it did not

specify the specific dollar amount of the August grant, only that it would be "slightly smaller" than the July grant; that it failed to give the reasons for the intended action; that it failed to state the specific change in law requiring such action; and that it failed to inform them of their right to continued benefits at the higher level pending a hearing, if a hearing is requested within 10 days of the mailing of the notice.

approved level of *seventy-four* percent of need.

Plaintiffs argue that a "reduction" may occur even though benefits are never legally established at a higher rate, and therefore the regulation applies to the circumstances of this case. Citing this Court's opinion in *Turner v. Walsh,* 435 F.Supp. 707 (W.D.Mo.1977), plaintiffs maintain that the regulation's safeguards are intended to protect AFDC recipients from the danger of a downward miscalculation whenever an across-the-board adjustment of benefits is contemplated. As it stated in *Turner,* the Court agrees that the only way to prevent the irreparable injury of *erroneous termination or reduction* of benefits is to provide timely and adequate notice and provide for continuing benefits pending resolution of timely appeals. However, those safeguards are required, both by the regulation and the due process clause of the fourteenth amendment, only in the case of termination or reduction in benefits. *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). There has been no such reduction in this case.

The net effect of the complex circumstances surrounding this case is that AFDC recipients in Missouri will have had their benefits *increased* from a level of *seventy* percent of need, as was reflected in their July checks, to a level of *seventy-four* percent of need, as will be reflected in the exact amounts of their August checks. Not only did plaintiffs receive their authorized increase in July, but, through the *good* offices of defendants, they received it *on time* and with an unexpected windfall in the form of the unauthorized one percent of need overpayment.[7]

This Court is unable to hold that plaintiffs are entitled to notice and hearing prior to an *increase* in their benefits. Although plaintiffs are correct in their asser-

tion that there is always a risk of miscalculation in an across-the-board adjustment of benefits, their remedy is the regular appeal procedure available to any aid recipient who believes his or her grant may have been miscalculated. Because of the lack of compelling circumstances present in a termination or reduction of benefits, neither the *regulations* nor the due *process* clause *of* the fourteenth amendment requires notice and hearing prior to an *increase* in benefits. The Court holds that 45 C.F.R. § 205.-10(a)(4) does not apply to the facts of this case because there has been no reduction of assistance within the meaning of the regulation.[8] Accordingly, it is hereby

ORDERED that the relief prayed for by plaintiffs be, and it is hereby, denied.

---

7. Defendants stated on the record that they will not attempt recoupment of the overpayment.

8. It is apparent that 45 C.F.R. § 205.10(a)(3), requiring certain notice be provided *"at the time* of any action affecting [a] claim" (emphasis added), *does* apply to the facts of this case. That regulation requires notice in writing of the recipient's right to a hearing, of the method by

which he may obtain a hearing, and that he may be represented by counsel or other representative or he may represent *himself.* The Court notes that the "Important Notice" mailed with the July benefit checks does not contain notice of the method by which a recipient may request a hearing.