Abel ROSAS, Adrian Rosas, and Isaac Rosas By and Through their guardian ad litem Margarita PEREZ, Donna Roraff, and Sandra Marshall, on behalf of themselves and all others similarly situated, and the Welfare Rights Organization of San Diego, Inc.,

v.

Linda McMAHON, Director, California Department of Social Services, Defendant and Third–Party Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary, United States Department of Health and Human Services, Third–Party Defendant.

No. C–87–1143–CAL.

United States District Court, N.D. California.

June 22, 1988.

Greenberg, Western Center on Law and Poverty, Los Angeles, Cal., for plaintiffs.

John J. Klee, Jr., Deputy Atty. Gen., San Francisco, Cal., for defendant and third party plaintiff.

## OPINION AND ORDER FOR SUMMARY JUDGMENT

LEGGE, District Judge.

Plaintiffs are a class of California residents who received benefits under the Aid to Families with Dependent Children ("AFDC") program during 1985. For several months of that year, as a result of then-recent changes in the AFDC statutes, plaintiffs received benefits in an amount greater than that to which they were entitled. Defendant California Department of Social Services ("DSS") is recovering or has recovered those excess benefits by deducting them from benefits plaintiffs are still receiving. Plaintiffs challenge the recoupment of those excess benefits by DSS as a violation of applicable statutes, regulations,[1] and the Due Process Clause of the United States Constitution.

Defendant McMahon is the director of DSS, and has filed a third-party complaint against the United States Department of Health and Human Services ("HHS") to prevent the federal government from seeking recoupment from the state if plaintiffs prevail in this suit. This opinion does not involve that third-party complaint, and the court at this time expresses no views on the rights and obligations between the state and federal governments.

Plaintiffs' motion for summary judgment was heard on April 1, 1988. Defendants do not dispute that the issues in this case are ones of law that can be decided on summary judgment. At the time of submission of the motion, the court informed the parties that it would rule first on the issue of whether DSS had violated any statute, regulation, or the constitution, and that further briefing on the issue of the appropri-

Brenton Rogozen, Charles Greenfield, Legal Aid Soc. of Santa Clara County, San Jose, Cal., Carol Ratsamy Bracy, Anson B. Levitan, Colleen Fahey Fearn, Peter M. Liss, Legal Aid Soc. of San Diego, Inc., San Diego, Cal., Robert D. Newman, Mark

1. In their briefs and at oral argument, plaintiffs argued that 45 C.F.R. § 206.10(a)(2)(i) applies to this case. However, the United States Supreme Court has since decided *Gardebring v. Jenkins,* —— U.S. ——, 108 S.Ct. 1306, 99 L.Ed.2d 515 (1988). In *Gardebring* the Court rejected the interpretation of the regulation advocated by plaintiffs here. Plaintiffs have accordingly withdrawn their claim based on that regulation.

ate remedy would be requested if the court determines that a violation did occur.

The court has reviewed the moving and opposing papers, the record of the case, and the applicable authorities and concludes, for the reasons indicated below, that plaintiffs' motion for summary judgment should be granted.[2]

## I.

AFDC is a cooperative federal-state program to assist needy dependent children and those who care for them. Participating states must "substantially comply" with federal law and regulations in order to receive federal funding. *See* 42 U.S.C. §§ 603–604; *King v. Smith*, 392 U.S. 309, 316–317, 88 S.Ct. 2128, 2132–33, 20 L.Ed.2d 1118 (1968). DSS is responsible for supervising AFDC throughout California; however, each county administers the program within its own jurisdiction. Cal.Welf. & Inst.Code §§ 10800–10825; *see Ross v. Superior Court*, 19 Cal.3d 899, 141 Cal.Rptr. 133, 569 P.2d 727 (1977).

AFDC benefits are based in part on the income of persons living in the home with the dependent child. Until 1985, calculation of benefit amounts did not take into consideration (1) the income of another minor child living in the same household with a qualified child (for example, income from Social Security payments), or (2) the income of a grandparent living in the household, unless the grandparent actually contributed to the child's support.

In July 1984, Congress passed the Deficit Reduction Act of 1984 ("DEFRA"). P.L. 98–369. Section 2640 of DEFRA requires that AFDC benefit calculations take into consideration both (1) the income of other minor children living in the same household (the "standard filing unit" rule), and (2) the income of a grandparent of a child whose parent is still a minor, when all three live in the same household (the "senior parent income" rule). *See* 98 Stat. 1145. In August 1984 the California Legislature passed statutes enacting the "standard filing unit" and "senior parent income" rules into state

law. 1984 Cal.Stat. Ch. 1447 § 2, codified at Cal.Welf. & Inst.Code § 11008.14.

In January 1985, DSS informed California counties that the new rules would be applied commencing February 1, 1985 to families already receiving benefits. DSS had the statutory responsibility to supply the counties with (1) directions for written notices to be sent to individual recipients affected by the changes and (2) regulations or other instructions explaining how the statutory changes were to be implemented. *See* Cal.Welf. & Inst.Code §§ 10740–10815, 11209.

The AFDC administrators at both the federal and state level found the new statutes complex, and had difficulties drafting implementing regulations. DSS did not supply the counties with directions for sending notices to recipients until February 5, and did not send implementing instructions until February 13. As a result, none of the 58 California counties sent AFDC recipients notices by February 1, 1985, that their benefits were to be reduced as of that date. The benefit checks sent on and after February 1 did not make any reductions as a result of the new rules.

The county administrators also found the new rules complex. Even after receiving the notice information and implementing instructions, they needed time to study the rules before trying to implement them. DSS acknowledges that it did not expect the counties to implement the new regulations in a timely manner. For example, as late as July 1985 DSS informed the counties that it had not set a specific date for implementation of the "standard filing unit" rule.

As a result of the foregoing difficulties, the counties delayed as much as seven months before notifying affected recipients of benefit adjustments. Notices were sent by the various counties from April to September 1985, and benefits were then reduced, although the effective date of the reduction was still February 1, 1985. After the adjustments were made, DSS informed recipients that they had been "overpaid" for the period between February 1,

---

2. The court acknowledges the assistance of J. Daniel Sharp in the preparation of this opinion.

1985 and the date of the adjustment. Some families were overpaid several hundred dollars.

Under 42 U.S.C. § 602(a)(22) DSS is obligated to "promptly take all necessary steps to correct any overpayment" of AFDC benefits. Overpayment correction is accomplished by withholding a portion of a recipient's ongoing benefits. If the overpaid individual no longer receives benefits, the statute authorizes recovery "by appropriate action under State law." DSS has either completed recovery of the above overpayments from current recipients, or is in the process of doing so.

Plaintiffs do not dispute that Congress had the power to reduce their benefits by enacting the new rules, and that defendants had the authority to implement the reductions. *See Atkins v. Parker,* 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985). Plaintiffs also do not dispute that they received adequate notice, under both the due process clause and the applicable statutes and regulations, prior to the actual reductions of their monthly benefit checks. However, plaintiffs assert that the failure of the state and the counties to give recipients *advance* notice of the February 1, 1985 reduction in their benefits is a violation of federal regulations and the Due Process clause of the United States Constitution. They seek declaratory relief and an injunction directing the state to cease its effort to collect the overpayments caused by the delay in notices, and to reimburse recipients for all such overpayments that have now been recouped.

## II.

The parties have stipulated to the certification of a class under Federal Rule of Civil Procedure 23(b)(2). The class consists of two subclasses. Subclass A, represented by plaintiffs Rosas, consists of California AFDC recipients who have been assessed an overpayment based on the application of the "senior parent income" rule for the time period from February 1985 through the month they received a notice prospectively implementing the new rule as to them. Subclass B, represented by plaintiffs Roraff and Marshall, consists of California AFDC recipients who have been assessed an overpayment based on the application of the "standard filing unit" rule for the period February 1985 through the month they received a notice prospectively implementing the new rule as to them.

The court accepts the parties' stipulation and certifies this action as a class action, with those subclasses.

## III.

Initially, the state contends that this court should not reach the merits of this dispute because of the principles of abstention and *res judicata.*

### A.

The abstention argument centers on the fact that two pending state court cases challenge the substantive validity of the "standard filing unit" rule and the "senior parent income" rule under the California Constitution. The state argues that if plaintiffs prevail in those state court cases, then it will be unnecessary for this court to rule on the constitutional issues raised by plaintiffs here. *See Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

The pendency of an action in state court is ordinarily not an obstacle to proceedings on the same matter in a federal court of competent jurisdiction. *Moses H. Cone Memorial Hospital v. Mercury Construction Co.,* 460 U.S. 1, 15, 103 S.Ct. 927, 936–37, 74 L.Ed.2d 765 (1984). Abstention is a very narrow exception to the duty of a federal court to adjudicate controversies that are otherwise within its jurisdiction. *Kern–Tulare Water District v. City of Bakersfield,* 828 F.2d 514, 518 (9th Cir.1987).

A federal court should abstain from a case only when (1) the complaint "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open"; (2) "Such constitutional adjudication plainly can be avoided if a definitive rule on the state issue would terminate the controversy"; and (3) the possibly determinative

state law issue is a close question. *Badham v. U.S. District Court,* 721 F.2d 1170, 1172 (9th Cir.1983); *see Pullman,* 312 U.S. at 498, 61 S.Ct. at 644. The first two of those requirements are not present here. First, this case clearly involves federal concerns, since the interpretation of federal regulations is at issue. Second, a definitive ruling against plaintiffs in the state court cases would not end this litigation. There is therefore no basis for abstention.

### B.

■ The state argues that *res judicata* bars relief to those members of the plaintiff class who were affected by the decision *Creaton v. Heckler,* 625 F.Supp. 26 (C.D. Cal.1985), *appeal dismissed,* 781 F.2d 1430 (9th Cir.1986). *Creaton* involved a substantive challenge to a federal regulation requiring that a child's Social Security benefits be considered in determining the income of that child's family for purposes of calculating AFDC benefits. The *Creaton* case did affect the substantive rights of certain persons affected by the "standard filing unit" rule. However, plaintiffs here are challenging the timeliness of the notices of benefit adjustments and the recoupment of overpayments. They seek an adjudication of the procedural rights of persons who actually received benefits during a period of several months in 1985. Those are different rights and different issues. The adjudication of one set of rights in one case would not bar litigation of the other rights and issues. The doctrine of *res judicata* does not apply. *See Harris v. Jacobs,* 621 F.2d 341, 343 (9th Cir.1980). This court therefore proceeds to an analysis of plaintiffs' claims in this case.

### IV.

In *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the United States Supreme Court held that procedural due process requires that a welfare recipient receive notice and a hearing before his benefits are terminated. In response to *Goldberg,* the Department of Health Education & Welfare promulgated 45 C.F.R. § 205.10. *See* 35 Fed.Reg. 8448

(May 29, 1970). Several portions of § 205.10(a) are relevant to this case:

(4) In cases of intended action to discontinue, terminate, suspend, or reduce assistance ...

(i) The State or local agency shall give timely and adequate notice, except as provided in paragraphs (a)(4)(ii), (iii) or (iv) of this section. Under this requirement:

(A) "Timely" means that the notice is mailed at least 10 days before the date of action, that is, the date upon which the action would become effective;

. . . .

(iii) Whenever changes in either State or Federal law require automatic grant adjustments for classes of recipients, timely notice of such grant adjustments shall be given which shall be "adequate" if it includes a statement of the intended action and a statement of the circumstances under which a hearing may be obtained and assistance continued.

. . . .

(5) An opportunity for a hearing shall be granted to any applicant who requests a hearing because his or her claim for financial assistance ... is denied, or is not acted upon with reasonable promptness.... A hearing need not be granted when either State or Federal law requires automatic grant adjustments for classes of recipients unless the reason for an individual appeal is incorrect grant computation.

Plaintiffs contend that the notice required by this regulation must be given at least ten days in advance of the proposed change in entitlement, which in this case would be at least ten days before February 1, 1985. Emphasizing the desirability of affording recipients an opportunity to plan for benefit reductions, plaintiffs argue that the phrase "would become effective" under subpart (4)(i)(A) refers to the date on which the substantive law takes effect, rather than the date on which a recipient's check first reflects that change.

Defendants argue that the notice requirement of the regulation focuses on the first date when there is an actual reduction

of a payment check that a recipient receives, and not on the date of the reduced entitlement. Thus, an action "would become effective" when the state agency first reduces the monthly checks, even though the change in law requiring the reduction had occurred earlier, and even though recipients' checks were greater than they were entitled to for several months.

Does 45 C.F.R. § 205.10(a)(4)(i) and (iii) require a state agency to send advance notice to AFDC recipients before a change in the law becomes effective? Or does the regulation allow the state to implement the change without providing notice until the date the checks are actually reduced, and then allow the state to collect the overpayments between the effective date and the date of the first reduced check?

### A.

Neither the parties nor this court have found any controlling precedent from this circuit or the U.S. Supreme Court regarding the proper application of this regulation. The issue has, however, arisen in other federal courts.

In *Becker v. Toia,* 439 F.Supp. 324 (S.D. N.Y.1977), a class of Medicaid beneficiaries sued the New York State Department of Social Services, arguing that the state had implemented a Medicaid "co-payment" requirement in violation of 45 C.F.R. § 205.10(a)(4). The co-payment provision required beneficiaries to pay for a portion of medical supplies and services that previously had been fully covered by Medicaid. The state mailed notices informing beneficiaries of this change on the day before the changes were to take effect. The court held that this notice "was neither timely nor adequate under the regulations. The State did not give the mandatory 10 day notice prior to the effective date of the statute." 439 F.Supp. at 331. *See also Becker v. Blum,* 464 F.Supp. 152, 157 (S.D. N.Y.1978).

This regulation also played a central role in *Turner v. Walsh,* 435 F.Supp. 707 (W.D. Mo.1977), *aff'd per curiam* 574 F.2d 456 (8th Cir.1978). A class of AFDC recipients challenged the implementation of Missouri regulations which had the effect of reducing or terminating cash grants and Medicaid assistance to members of the class. The state mailed notice of these changes ten days before they were to take effect. But the court held that these notices did not satisfy the regulation because they omitted any reference to the recipient's right to request a hearing. The court also noted:

> [T]here also would appear to be at least a question as to whether the notice was "timely" within the meaning of 45 C.F.R. § 205.10(a)(1)(A). The challenged reductions and terminations were scheduled to become effective July 1, 1977. The notice was *dated* June 20, 1977, and mailed on or after that date. It undoubtedly was received by 37,000 families less than ten days prior to the effective date of the termination or reduction.

435 F.Supp. at 714 n. 8. Thus the *Turner* court interpreted the regulation at issue here to require notice before a change in the law becomes effective.

In *Rochester v. Baganz,* 479 F.2d 603, 606 (3d Cir.1973), Delaware enacted legislation requiring a reduction in AFDC benefits. The state sent notices four days before the reductions were to occur. The plaintiffs, representing the class of affected AFDC recipients, contended that this notice was untimely under a prior version of 45 C.F.R. § 205.10. The state argued that the regulation was not intended to apply to a general reduction due to a change in the law. The court rejected this argument, noting that

> The Secretary [of HEW] urges that even in cases of across-the-board reductions such advance notice is necessary, or at least appropriate, for the orderly administration of welfare programs. He urges that *in a program designed to meet subsistence needs recipients ought to be informed in advance if their payments are to be cut for any reason, so that the may be able to plan for the cut, and to the extent possible adjust to it.*

479 F.2d at 606 (emphasis added). Defendants contend that *Rochester* was concerned

with protecting recipients' *payments,* and that the case supports their interpretation of the regulation as not requiring notice when a change in *entitlement* occurs. The *Rochester* opinion does not support this interpretation. The court clearly stated that "an across the board reduction based on state law or policy may be put into effect prior to a fair hearing, *but only after fifteen days notice.*"[3] 479 F.2d at 606 (emphasis added). *Accord Sherrill v. Freeman,* 473 F.Supp. 1260 (W.D.Mo.1979); *Budnicki v. Beal,* 450 F.Supp. 546, 551 (E.D.Pa.1978); *Sockwell v. Maloney,* 431 F.Supp. 1006, 1011 n. 8 (D.Conn.1976); *see also LeBeau v. Spirito,* 703 F.2d 639 (1st Cir.1983); *Eder v. Beal,* 609 F.2d 695, 699 (3d Cir.1979); *Almeida v. Chang,* 434 F.Supp. 1177 (D.Haw.1977).

■ Thus, the existing case law supports the conclusion that 45 C.F.R. § 205.10(a)(4)(i) and (iii) requires the state to send notice at least ten days before recipients' entitlement is reduced by a change in the law, regardless of the date when the change is reflected in a recipient's monthly check.

### B.

Many of the cases do not clearly distinguish between the date when a recipient's entitlement is reduced by law and the date when the agency actually lowers the amount of the recipients' check. In most cases those two dates were the same or there was no need to distinguish between them. Indeed, this court is of the opinion that the drafters of the regulation did not distinguish between the two dates because they contemplated that the state agencies could implement changes in the law immediately, without the need to delay implementation several months past the effective date of the change. When the notice provisions of 45 C.F.R. § 205.10 were amended in 1973, the time requirement was changed from fifteen days to ten. The Department of Health Education and Welfare made the following statement in re-

sponse to the public comments it had received regarding this change:

Opponents of the reduction of the advance notice period from 15 days to 10 days expressed concern that a 10–day period was too short for a recipient to decide whether to appeal and to make adjustments to reduced assistance. Many stressed slow mail delivery. Proponents favored the change *because it reduced the disproportionate number of overpayments to ineligible individuals,* and 10 days is sufficient time for the recipient to assess the correctness of the agency action and request a hearing if he believes the action is erroneous.

38 Fed.Reg. 22006 (Aug. 15, 1973) (emphasis added). The Department's concern for avoiding overpayments is an indication that the Department anticipated that notices would be provided to recipients before their amount of entitlement was reduced by law, and not simply before their monthly checks were reduced.

Another such indication occurred when the Department prepared regulations for the changes in the AFDC program mandated by the Omnibus Budget and Reconciliation Act of 1981. The Department gave the public an opportunity to comment on the proposed regulations and responded to the comments in the *Federal Register.* *See* 47 Fed.Reg. 5665–73 (Feb. 5, 1982). The Department then issued the following statement:

In the course of consulting with States over these implementing regulations, there is a related issue which merits brief discussion—the extent to which timely notice must be given and recipients can file for hearings and request that aid be paid pending the hearing decision based on individual case changes.

The current regulations at 45 C.F.R. § 205.10 are unchanged and still apply. When changes in either State or Federal law require automatic grant adjustment for classes of recipients, timely notice must be given at least 10 days prior to the action, which includes a statement of

---

**3.** The prior version of the regulation was identical to the current one, except that it required 15 days advance notice rather than ten. *See* 38 Fed.Reg. 22006 (Aug. 15, 1973).

the intended action, the reason, a reference to the specific change in law requiring such action and a statement of the circumstances under which a hearing may be obtained and assistance continued.

47 Fed.Reg. at 5672–73. Although these remarks do not clearly distinguish between the effective date of the change in the law and the date the states would reduce the amounts of monthly checks, the fact that the Department cautioned the states implies that the states are to provide notice before a change in the law becomes effective.

Thus, the administrative record regarding the drafting and promulgation of this regulation indicates that it was intended to require notice before a change in the law becomes effective.

### C.

Defendants emphasize that 45 C.F.R. § 205.10 was promulgated in response to the U.S. Supreme Court's decision in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969). The *Goldberg* decision held that due process requires that a welfare recipient be afforded notice and an opportunity to be heard before his benefits are terminated. The decision did not address what notice, if any, the state must provide to welfare recipients of changes in the law which affect their benefit amounts. Defendants argue that this circumstance suggests that the regulation requires notice only when actual payments are reduced, and not when the amount of entitlement is changed by law.

The answer to this argument is that, while the regulation was adopted in response to *Goldberg*, the regulation was not necessarily limited to the minimum standard required by *Goldberg*. The drafters of the regulation apparently contemplated that changes in welfare laws would be implemented when they were supposed to be implemented, and that it was therefore unnecessary to formulate rules applicable to long periods of delay.

Also, the regulation at issue here is specifically tailored to situations involving changes in the substantive law. It does not require just the procedural safeguards that accompany individual benefit terminations, which was the situation presented in *Goldberg*. For example, an administrative hearing must normally be provided to any individual aggrieved by any agency action; however, a hearing need not be granted when benefits are reduced due to a change in the law, except when a recipient challenges the correctness of his grant computation. 45 C.F.R. § 205.10(a)(5). Thus, the regulation should not be interpreted so narrowly as to cover only the specific situation that arose in *Goldberg v. Kelly*.

Defendants also argue that interpreting the regulation to require a state to provide notice to recipients before reducing their benefits due to a change in the law would be to hold that "a substantive change in the law can have no effect until the family received at least 10 days advance notice that the law has changed." The court does not agree with this characterization. An act of Congress making a reduction in the AFDC program is a statement to participating states that the federal government will no longer provide as much funding to families affected by the change. Congress has the right to do so. *Atkins v. Parker*, 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985). Individual states may either implement the change through state statutes and regulations in their own AFDC programs, or acquiesce in the reduced federal funding and continue to pay the higher benefits from their own revenues. If the state chooses to implement the change in the law, such implementation must conform to the requirements of federal law and regulations (including the requirement of notice under 45 C.F.R. § 205.10). If a state does not wish to, or fails to, comply with federal law, the federal government may withhold that funding from the state. 42 U.S.C. §§ 603–604. This reduction of funding is what serves to implement the federal government's change in the law. The notice requirement does not deprive the substantive change in the law of its effect.

For the foregoing reasons, the court concludes that defendant DSS violated 45 C.F.R. § 205.10(a)(4)(i) and (iii). Defendant should have sent notice at least 10 days in advance of the February 1, 1985 effective date of the reduction of benefits.[4]

### V.

The court will defer decision on the appropriate remedy for defendant's violation of the federal regulation until further briefing and hearing. The decision on that issue, however, is affected by one of plaintiffs' arguments in support of both this cause of action and their claim for relief: that they have not received "overpayments" within the meaning of the AFDC statute. The court will now address that argument.

42 U.S.C. § 602(a)(22) provides that the "State agency will promptly take all necessary steps to correct any overpayment or underpayment of aid under the state [AFDC] plan." An "overpayment" is defined in 45 C.F.R. § 233.20(1)(13)(i) as "a financial assistance payment received by or for an assistance unit for the payment month which exceeds the amount for which the unit was eligible."

Plaintiffs contend that this definition is ambiguous. The alleged ambiguity lies in the congressional intent behind the overpayment statute, which was to provide an incentive to AFDC recipients to report their circumstances promptly and accurately.[5] Plaintiffs argue that an interpretation of the overpayment statute to require recoupment under the circumstances of this case would do nothing to advance this congressional purpose, and thus Congress could not have intended the statute to apply to a case such as this.

In *Turner v. McMahon*, 830 F.2d 1003 (9th Cir.1987), the ninth circuit held that the overpayment statute clearly and unambiguously requires a state agency to recover *"any overpayment,"* regardless of its source, and regardless of the relative non-culpability of the recipient. This court therefore finds that the payments received between February 1, 1985, and the date when benefits were actually reduced were "overpayments," and that DSS was authorized by 42 U.S.C. § 602(a)(22) to seek recovery of the excess benefits at issue in this litigation.

### VI.

This court has determined that defendant DSS violated 45 C.F.R. § 205.10(a)(4)(i) and (iii) by failing to provide advance notice. The parties must now address the issue of the appropriate remedy. Plaintiffs are directed to file briefs on this issue by July 15, 1988. Defendants, including the third-party defendant, are directed to file a reply brief by July 29, 1988. A hearing on the issue of the appropriate remedy will be held on August 5, 1988, at 9:30 a.m.

IT IS SO ORDERED.

---

**4.** Having decided this issue on the basis of the regulation, the court finds it unnecessary to reach the constitutional issues raised by the parties. *Jean v. Nelson*, 472 U.S. 846, 854, 105 S.Ct. 2992, 2996–97, 86 L.Ed.2d 664 (1985). The court accordingly intimates no view on what, if any, notice is required by the due process clause when AFDC benefits are reduced by a change in the law.

**5.** Before the enactment of the Omnibus Budget Reconciliation Act of 1981 ("OBRA"), P.L. 97–35, 95 Stat. 856–57, federal law did not require states participating in the AFDC program to recoup overpayments. The law provided only that, if a state recouped overpayments, it must also disburse any underpayments of aid. OBRA changed the law by requiring states to recoup overpayments and disburse underpayments. The legislative history shows that Congress intended this change to provide an incentive for AFDC recipients to report their circumstances promptly and accurately to state agencies. *See* S.Rep. No. 97–139, 97th Cong., 1st Sess. 519, 20, *reprinted in* 1981 U.S.Code Cong. & Admin. News 396, 785–86 (Report of the Senate Finance Committee).