Itha David BECKER, Hannah M. Kneafsey, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

Barbara BLUM, as Commissioner of the New York State Department of Social Services, and Muriel O'Connor, as Commissioner of the Sullivan County Department of Social Services, Defendants.

No. 77 Civ. 2561.

United States District Court, S. D. New York.

Dec. 28, 1978.

9. *Id.* at 916.

David L. Posner, Mid-Hudson Legal Services, Inc., Monticello, N. Y., for plaintiffs.

Emanuel M. Kay, Asst. Atty. Gen., State of New York, New York City, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

In this action plaintiffs Itha David Becker and Hannah M. Kneafsey, Medicaid beneficiaries, on behalf of themselves and all persons similarly situated, have challenged the enactment and implementation of New York Social Services Law § 367–a(6) ("Section 367–a(6)"). This court has jurisdiction pursuant to 28 U.S.C. § 1343(3) and principles of pendent jurisdiction.

The attack on Section 367–a(6) in plaintiff's complaint is tripartite. First, it is alleged that the means by which the department implemented Section 367–a(6) was faulty in that recipients were not provided with adequate and timely notice as required by the Due Process Clause of the Fourteenth Amendment and pertinent federal and state regulations. Second, the statute itself is attacked as violating 42 U.S.C. § 1396a(a)(10)(B), and the Equal Protection Clause of the Fourteenth Amendment. Third, it is asserted that defendants' failure to consult with the Medical Advisory Committee violates 42 U.S.C. § 1396a(a)(22)(D),

federal regulations issued pursuant to that section and New York Social Services Law § 365–c.

On June 23, 1977, I issued a preliminary injunction herein barring defendants from implementing Section 367–a(6).[1]

On July 15, 1977, I issued an order certifying as a plaintiff class all persons receiving medical assistance benefits pursuant to New York Social Services Law §§ 363 *et seq.*, who have been, are, or will be required to pay a proportionate cost of their drugs and medical supplies as required by Section 367–a(6) and implementing regulations and directives. I certified as a sub-class all persons in the above class who receive medical assistance benefits which are, in part, federally funded.

Plaintiffs now move for partial summary judgment, with respect to faulty implementation of Section 367–a(6). For the reasons hereafter stated, the motion is granted.

## II

"[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. "[O]n a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried. Moreover, . . . it must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975). "However, it is equally true that summary judgment should not be denied where the only issues raised are frivolous or immaterial ones which would simply serve to provide an exercise in futility or a purposeless trial for the district court, particularly where no jury has been demanded." *United States v.*

1. *See Becker v. Toia*, 439 F.Supp. 324 (S.D.N.Y. 1977). One of the bases for the issuance of the preliminary injunction was a finding by me that

*Matheson*, 532 F.2d 809, 813 (2d Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 185 (1976).

There are no disputed issues of material facts on the motion before me. Thus summary judgment is appropriate.

## III

Section 367–a(6) provides:

6. Any inconsistent provision of law notwithstanding, rates of payment for claims for medical and prosthetic appliances, supplies and equipment, dental care and eyeglasses and each separate claim for drugs, furnished to persons twenty-one years of age or over but under sixty-two years of age, shall be reduced in accordance with department regulations by an amount not to exceed the maximum amount authorized by federal law and regulations, except that in the case of each separate claim for drugs such maximum amount shall not exceed fifty cents, as a co-payment amount, which co-payment amount the person providing such care, services, supplies and equipment, or drugs may charge the recipient, provided, however, that no such reduction may be made for any such care, services, supplies and equipment, or drugs provided to any recipient receiving care on an in-patient basis in a hospital as defined in article twenty-eight of the public health law; provided further that the exclusion of individuals age sixty-two or over from the co-payment provision of this subdivision shall apply to the extent consistent with federal law and regulations.

In short, with certain exceptions Section 367–a(6) mandates that recipients of medical assistance payments co-pay a portion of the cost of medical appliances and prescription drugs. The exemption for those over 61 years of age has been deleted by action of the New York State Department of Social Services ("the department").

plaintiffs had shown probability of success on the issue now before me. *Id.* at 329 *et seq.*

On April 15, 1977, the Commissioner of the department sent instructions to the Commissioners of the County Departments of Social Services directing them to begin collecting co-payments on May 1, 1977. Defendant Sullivan County Department of Social Services mailed notice of the co-payment requirement to prospective recipients on or about April 30, 1977. The Departments of Social Services of the other counties sent notices to prospective recipients at about the same time, after May 1, or in some cases, apparently not at all. Thus recipients, with respect to whom there was previously no co-payment requirement, were required to co-pay without advance notice.

### IV

Plaintiffs contend that recipients of Medicaid and recipients of state financial medical assistance payments who do not participate in Medicaid are entitled to "timely" and "adequate" notice of the co-payment requirement, as such notice is defined by state regulation. 18 N.Y.C.R.R. § 358.8 ("Section 358.8"). Additionally, plaintiffs maintain that Medicaid recipients are entitled to notice which is "timely", as defined in 45 CFR § 205.10(a)(4)(i)(A) and "adequate", as defined in 45 CFR § 205.10(a)(4)(iii).[2]

*State Regulations*

18 N.Y.C.R.R. Section 358.8 provides in relevant part:

§ 358.8(a): Except as set forth in this section, in cases of any proposed action to discontinue or reduce . . . medical assistance authorization, . . . timely and adequate notice thereof detailing the reasons for the proposed action shall be sent to the recipients. Under this requirement:

(1) *Timely* means that the notice is mailed at least 10 days before the date of action, that is, the date upon which the action would become effective, . . .

(2) *Adequate notice* means a written notice that includes details of reasons for the proposed action, explanation of the individual's right to conference, his right to request a fair hearing, and the circumstances under which . . . medical assistance authorization . . . is continued if a fair hearing is requested.

While defendants contend that Section 358.8 does not mandate notice for statutory changes, none of the exceptions to Section 358.8(a) exempt statutory changes from the notice requirement.[3]

■ Defendants therefore must provide timely and adequate notice to all those from whom it is intended that co-payments be collected under New York State's medical assistance program.

*Federal Regulations*

■ In New York State the federal and state governments together fund the Medicaid program. Members of the subclass certified in this case receive benefits pursuant to this program. Co-payments by recipients are allowed under federal law. 42 U.S.C. § 1396a(a)(14), 45 CFR § 249(a)(3). As a condition to federal participation in the funding, New York State must administer the funds in accordance with applicable federal laws and regulations as well as the state laws and regulations. 42 U.S.C. §§ 1396a, 1396c. Thus where the federal regulations require that certain measures be taken, defendants must comply.

45 C.F.R. § 205.10(a)(4) ("Section 205.10(a)(4)") provides in relevant part:

(4) In cases of intended action to discontinue, terminate, suspend or reduce assistance:

---

**2.** Plaintiffs also assert that defendants have violated the due process right to notice of those recipients whose assistance is furnished partially by the federal government and of those whose assistance is provided solely by New York State. Because I determine, in this memorandum order, that recipients are entitled to such notice under the state and federal regulations, I do not reach the due process claim.

**3.** The exceptions, enumerated in Section 358.8(d), are death, a signed statement by recipient that he/she no longer wishes assistance, institutionalization, unknown whereabouts, receipt of assistance in a new jurisdiction, removal of child from home, change in prescription, or automatic termination of a special allowance.

(i) The State of local agency shall give timely and adequate notice, except as provided for in paragraphs (a)(4)(ii), (iii), or (iv) of the section. Under this requirement:

(A) "Timely" means that the notice is mailed at least 10 days before the date of the action, that is, the date upon which the action would become effective;

(B) "Adequate" means a written notice that includes a statement of what action the agency intends to take, the reasons for the intended agency action, the specific regulations supporting such action, explanation of the individual's right to request an evidentiary hearing (if provided) and a State agency hearing, and the circumstances under which assistance is continued if a hearing is requested;

$$* \quad * \quad * \quad * \quad * \quad *$$

(iii) When changes in either State or Federal law require automatic grant adjustments for classes of recipients, timely notice of such grant adjustments shall be given which shall be "adequate" if it includes a statement of the intended action, the reasons for such intended action, a statement of the specific change in law requiring such action and a statement of the circumstances under which a hearing may be obtained and assistance continued.[4]

N.Y.S.S.L. Section 367–a(6) provides for an automatic grant adjustment, and the above regulations apply to those recipients whose aid is partially federally funded. *See Budnicki v. Beal*, 450 F.Supp. 546 (E.D.Pa. 1978) (Lord, Ch. J.); *Curtis v. Page*, No. 78–732 (N.D.Fla. April 13, 1978).[5]

---

**4.** The exceptions to the timely notice requirement of Section 205.10(a)(4) are fraud (Section 205.10(a)(4)(iv)), and those enumerated under the state regulatory system (Section 205.-10(a)(4)(ii)). (*See* n.3 *supra*).

**5.** Defendants argue that notice is not required under Section 205.10 unless there is a possibility that a recipient could be granted a hearing, and that there is no possibility of a hearing in regard to any action taken under Section 367–a(6).

The pertinent regulation governing when a hearing must be granted for questions arising under an automatic grant adjustment is Section 205.10a(5):

An opportunity for a hearing shall be granted to any applicant who requests a hearing because his claim for financial or medical assistance is denied, or is not acted upon with reasonable promptness, and to any recipient who is aggrieved by any agency action resulting in suspension, reduction or termination of assistance. A hearing need not be granted when either State or Federal law require automatic grant adjustments for classes of recipients *unless the reason for an individual appeal is incorrect grant computation*. (Emphasis supplied).

Implementation of Section 367–a(6), according to defendants, does not allow for any grant computations. Thus there can be no incorrect grant computations which are the only grounds for a hearing.

Defendants' position neglects the exemptions from Section 367–a(6) which might be misapplied. By its terms, Section 367–a(6) excepts recipients under 21 and those receiving care as in-patients in certain institutions. Factual mistakes as to these two circumstances are possible and may result in incorrect grant computation. Thus, recipients who allege that such a mistake has been made in their case may be entitled to a hearing under Section 205.10a(5). Additionally, Section 29 of Chapter 77 of the Laws of 1977 of New York State provides that the act of which Section 367–a(6) was a part shall not "be interpreted so as to deny care, services, or supplies to any individual if such care, services and supplies are necessary in order to complete a course of treatment initiated prior to enactment of this act." This exemption could produce thorny questions of fact demanding expert medical testimony on what supplies or services are necessitated by a course of treatment beginning before passage of the act.

These possibilities may, among others, appropriately be part of a § 205.10(a)(4)(iii) "statement of the circumstances under which a hearing may be obtained. . . ."

Defendants also argue that co-payments do not fit within any of the categories of Section 205.10(a)(4), *i. e.*, "cases of intended action to discontinue, terminate, suspend or reduce assistance." It is alleged that because the ceiling on the amount that the department pays to pharmacists for dispensing prescription drugs has risen 60 cents, the 50 cent co-payment merely absorbs some of the increase, but does not actually reduce the assistance. This reasoning is not persuasive. The increase is in effect whether or not co-payments are required. Recipients who must co-pay will be receiving 50 cents less aid for each prescription

Defendants claim that HEW's regulations were promulgated in response to *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and therefore can call for no more than does *Goldberg*'s application of due process to governmental assistance programs. The argument continues that due process does not require notice in this case and therefore neither do the regulations.

■ I reject these contentions. The regulations may very well have been established to satisfy the dictates of *Goldberg*, but constitutional due process requirements constitute minimal criteria; they do not limit the reach of HEW's regulations. Whether due process requires less than the regulations is irrelevant and need not be decided here.

■ Defendants also argue that if the federal regulations do mandate notice they are arbitrary and capricious and should be stricken. This argument I also reject. Section 367–a(6) may be misapplied with respect to individual recipients. Without adequate notice, such recipients might never know that the law was erroneously applied as to them, and might be unaware of the available route to presentation of their claims. Many recipients exist on an extremely tight budget which co-payments might stretch beyond the bursting point. Timely and adequate notice will allow recipients to challenge what they may believe to be an incorrect application of Section 367–a(6) before they are required to co-pay. *See* 45 C.F.R. § 205.10(a)(6). The federal regulations are not arbitrary but reasonably

serve a valid purpose. "Absent constitutional constraints or extremely compelling circumstances" *Vermont Yankee Nuclear Power Company v. Natural Resources Defense Council, Inc., et al.,* 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978), the federal regulations must be and are upheld.[6]

**V**

■ Enforcement of the regulations does not subject the state to the hardship of providing countless unnecessary hearings, because, under the regulations, "[t]he agency may deny or dismiss a request for a hearing where . . . the *sole* issue is one of State or Federal law requiring automatic grant adjustments for classes of recipients. . . ." 45 C.F.R. § 205.-10(a)(5)(v) (emphasis supplied). Thus under the regulations, unless there is an issue concerning "circumstances under which a hearing may be obtained,"[7] the agency may properly deny a request for a hearing. *See also*, in the state system, 18 N.Y.C.R.R. § 358.8(c)(1) and (2).

**VI**

■ Defendants suggest that even if they must provide recipients with notice, the proper remedy is to order that notice be given but to allow Section 367–a(6) to be implemented immediately. I disagree. Notice must be given in a timely and adequate manner as spelled out in the federal and state regulations. Section 367–a(6) cannot be implemented unless notice is mailed at least 10 days prior to the first day that co-payments are to be collected.

than if they did not have to co-pay. *See Becker v. Toia,* 439 F.Supp. 324, 331 (S.D.N.Y.1977).

The Department of Health, Education and Welfare is in accord with my reading of its regulations and has so stated in its amicus brief in this case and in a letter sent by the Regional Commissioner of H.E.W. *to the Commissioner* of the New York State Department of Social Services within three weeks of the implementation of Section 367–a(6) (Exhibit 8 of plaintiffs' statement pursuant to Rule 9(g)). HEW's construction of its regulations in the area entrusted to its care by Congress is entitled to great deference. *Beal v. Doe,* 432 U.S. 438, 447, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977).

**6.** Defendants contend that there are situations in which it would be absurd to require notice and that upholding the federal regulations will lead to notice being required in those situations. Whether the circumstances defendants describe require notice, or whether to require *notice in such circumstances would be arbitrary,* are not questions which are before me.

**7.** Section 205.10(a)(4)(iii). (For example, an issue of incorrect class characterization or status as an in-patient receiving care in certain institutions or necessity to complete a course of treatment. *See* n.5, *supra* ).

Submit judgment on notice.
SO ORDERED.