[No. A045646. First Dist., Div. Five. Aug. 31, 1989.]

[As modified Sept. 25, 1989.]

LAURIE FRANK et al., Plaintiffs and Respondents, v.
KENNETH KIZER, as Director, etc., et al., Defendants and
Appellants.

COUNSEL

John K. Van de Kamp, Attorney General, Asher Rubin and John Klee, Deputy Attorneys General, for Defendants and Appellants.

Evelyn R. Frank, Katherine E. Meiss, Jane Perkins and Stanley L. Dorn for Plaintiffs and Respondents.

OPINION

**LOW, P. J.**—We decline to exempt the California Department of Health Services (the Department) from provisions of the federal regulations governing termination, suspension or reduction of Medicaid services (Medi-Cal in California). Any exemptions or changes in the federal regulations must be addressed to the federal regulators, not the courts.

Under the joint federal/state Medicaid program established by title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.), the State of California is obligated to administer the program in accordance with the federal regulations adopted by the United States Department of Health and Human Services (HHS). (42 U.S.C. § 1396a; *Jeneski* v. *Myers* (1984) 163

Cal.App.3d 18, 31 [209 Cal.Rptr. 178]; *Becker* v. *Blum* (S.D.N.Y. 1978) 464 F.Supp. 152, 155.) The federal regulations require, in most cases, the Department give 10 days' notice to the recipient before it terminates, suspends or reduces its benefits or medical services. (42 C.F.R. § 431.211 (1987) [all regulations are to the year 1987].)[1]

The written notice must contain: "(a) A statement of what action the agency intends to take; (b) The reasons for the intended action; (c) The specific regulations that support, or the change in Federal or State law that requires, the action; (d) An explanation of—(1) The individual's right to request an evidentiary hearing if one is available, or a State agency hearing; or (2) In cases of an action based on a change in law, the circumstances under which a hearing will be granted; and (e) An explanation of the circumstances under which Medicaid is continued if a hearing is requested." (42 C.F.R. § 431.210.)

These regulations also require that when the state agency mails the 10-day notice and the recipient requests a hearing before the date of the action, the agency may not terminate or reduce services until a decision is rendered after the hearing—except in certain instances not applicable here. (42 C.F.R. § 431.230(a).)

I

■ The Department contends that despite the plain language of the regulations, the 10-day notice is not required in all cases—specifically, when acute-level care is no longer medically necessary—nor must the state continue to pay for covered services when a timely request for a hearing is made, except in cases involving life-threatening conditions or where intended action may cause the recipient severe harm. Its contention is based on proposed regulation changes. Under the current state regulations, the 10-day notice and uninterrupted medical assistance apply only to (1) skilled nursing facilities and other long-term custodial care facilities, and (2) treatment for chronic hemodialysis, chemotherapy for cancer, and radiation therapy. (Cal. Code Regs., tit. 22, § 51014.2, subd. (a)(2)(A), (B).) In all other cases, written notice of any intended action to reduce or terminate

---

[1] The 10-day advance notice is not required under limited exceptions: Under 42 Code of Federal Regulations, section 431.213, notice may be given not later than the date of the action if (a) the recipient has died; (b) he no longer wishes services or provides information that requires termination or reduction of services; (c) he is admitted to an institution which is ineligible under the plan for further services; (d) his whereabouts are unknown; (e) the recipient is receiving benefits from another agency; and (f) if a change in the level of medical care is prescribed by the recipient's physician. Under 42 Code of Federal Regulations, section 431.214, a five-day advance notice shall be given if the agency has facts suggesting probable fraud by the recipient.

medical services is provided only at the time of application and on a quarterly basis thereafter. (Cal. Code Regs., tit. 22, § 51014.1, subd. (a).) The state regulations do not require that the notice specify the reason for the intended action and the specific regulations that support the change, all in violation of the federal regulations. (42 C.F.R. § 431.210.) The written notice of the Department's intended action is sent to the provider who is expected to inform the recipient of the Department's decision. With the possible exception of the acute care situation, the Department concedes that its notice and continuing payment policies violate the express federal regulations.

The Department's practices were challenged by two recipients, Laurie Frank and Marguerite Cronin.[2] Ms. Frank suffers from "severe chemical hypersensitivity" and had been receiving oxygen for several years under the Medi-Cal program until she was notified, on August 3, 1988, that payments would be terminated on August 1. She timely applied for a hearing, but the Department refused to pay for services pending the outcome of the hearing. She prevailed at the hearing and the Department paid her retroactive benefits. Nevertheless, from the date of notice in August 1988, until she was reimbursed sometime after the date of decision January 13, 1989, Ms. Frank had to borrow money and cut back on food in order to pay her oxygen costs.

Ms. Cronin, 81 years old, was a patient at Memorial Medical Center in Long Beach since May 28, 1988. She was being treated for pulmonary stress and a stroke. On October 28, 1988, the Department discontinued payment for her acute care. No written notice was given to the recipient or to her son of the Department's decision to discontinue the acute care coverage or of their right to appeal the termination decision. In fact, Ms. Cronin's son was improperly informed by a hospital representative that they had no right to seek review of the Department's decision. The hospital threatened to evict her as a "trespasser" unless she paid her bill. Only a temporary restraining order prevented her immediate discharge. Three weeks later, her condition worsened and the Department resumed paying the hospital for acute care services. During that three-week period, the Department paid the hospital at the reduced administrative day care rate. The Department concedes that the oral notice to Ms. Cronin's son did not comply with the federal require-

[2] In addition to the general writ of mandate (Code Civ. Proc., § 1085), Ms. Frank filed a writ for administrative mandate from the Department's decision denying her request for aid paid pending the hearing. (Code Civ. Proc., § 1094.5.) Both plaintiffs ultimately received the benefits they were seeking, and the trial court dismissed Ms. Frank's administrative writ petition as moot. Contrary to the Attorney General's contention, they both have standing to pursue this mandamus action to compel the Department to comply with the controlling federal regulations. (*Green* v. *Obledo* (1981) 29 Cal.3d 126, 144 [172 Cal.Rptr. 206, 624 P.2d 256].)

ment. But the Department asserts that this procedure is consistent with its policy to notify the patient's physician and the hospital with the understanding that they will inform the patient.

These recipients petitioned for a writ of mandate (Code Civ. Proc., § 1085) to compel the Department to comply with the HHS guidelines. The trial court granted the writ and entered judgment ordering the Department to conform its practices to the federal rules. To implement the writ, the trial court further ordered the Department (1) to pay aid pending appeal in *all* cases pending as of the date of this writ and (2) until the Department issues notices which explain the circumstances under which care is continued, to pay aid pending appeal in *all* cases in which the hearing is requested after the date of this writ, whether or not the recipient's request for a hearing would be timely under the federal regulations. The Department appeals from this judgment.

Participation in the Medicaid program is voluntary, but once a state has elected to participate and receive federal funds it " 'must fully comply with federal statutes and regulations in its administration of the program. [Citations.]' " (*Jeneski* v. *Myers, supra,* 163 Cal.App.3d at p. 31, quoting *Smith* v. *Miller* (7th Cir. 1981) 665 F.2d 172, 175.) The federal regulations themselves explicitly make state compliance mandatory. "A State plan must provide that the requirements of §§ 431.205 through 431.246 of this subpart are met." (42 C.F.R. § 431.202.)

The notice and evidentiary hearing provisions were adopted in response to the due process standards announced in *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011], which required a noticed hearing before government welfare benefits were terminated. (At p. 264 [25 L.Ed.2d at p. 297]; *Moffitt* v. *Austin* (W.D.Ky. 1984) 600 F.Supp. 295, 297.)[3] Although conceding that these regulations were triggered by the *Goldberg* decision, the Department would have us limit the requirements for prior notice and continued benefits to those situations which are life-threatening or involve severe harm to the recipient. We cannot sanction such an exemption. The constitutional due process requirements announced in *Goldberg* constitute minimal criteria and do not restrict HHS's power to fashion procedures it determines due process requires. This same conclusion was reached in *Becker* v. *Blum, supra,* 464 F.Supp. at page 157. There, the New York State Department of Social Services, without advance notice, lifted the exemption from copayment of medical appliances and prescriptions for recipients over 61 years of age. The district court found this practice violat-

---

[3] 42 Code of Federal Regulations, section 431.205(d) states: "The hearing system must meet the due process standards set forth in *Goldberg* v. *Kelly,* 397 U.S. [254] (1970), and any additional standards specified in this subpart."

ed the relevant federal regulations and directed the state to comply with the notice and hearing requirements. (*Ibid.*) In so doing, the district court rejected the same argument raised here, that the *Goldberg* decision did not require notice in all cases, and therefore neither do the regulations. (*Ibid.*) Whether due process is satisfied by lesser standards than contained in the HHS regulations is not open to debate in this forum. The interpretation by HHS of its own regulations is entitled to great weight and deference. (*New York Dept. of Social Services* v. *Dublino* (1973) 413 U.S. 405, 421 [37 L.Ed.2d 688, 699, 93 S.Ct. 2507]; *Potter* v. *James* (M.D.Ala. 1980) 499 F.Supp. 607, 612.) "Absent constitutional constraints or extremely compelling circumstances" (*Vermont Yankee Nuclear Power Corp.* v. *NRDC* (1978) 435 U.S. 519, 543 [55 L.Ed.2d 460, 479, 98 S.Ct. 1197]), the federal regulations must be followed.

The Department complains that full compliance would "have a catastrophic impact on the state's effort to control Medi-Cal costs." The Department asserts that in some hypothetical situations literal compliance with the 10-day notice is impossible, especially for continued acute hospital care. There is no allegation that the requisite notice could not have been given to Ms. Frank and Ms. Cronin before the termination or reduction of services.[4] While unnecessary expenditures are a legitimate state concern, this governmental interest does not, per se, outweigh the recipient's interest in obtaining uninterrupted medical services. This same fiscal argument, that full compliance with the federal regulations would have a catastrophic impact, was raised and rejected in *Goldberg* and other cases. (*Goldberg* v. *Kelly, supra,* 397 U.S. at p. 266 [25 L.Ed.2d at p. 298].) "[T]he interest of the eligible recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens." (*Ibid.*; *Potter* v. *James, supra,* 499 F.Supp. at p. 610; *Turner* v. *Walsh* (W.D.Mo. 1977) 435 F.Supp. 707, 715-716, and cases cited therein.) The Department has failed to demonstrate an overriding governmental interest sufficient to exempt it from compliance with the federal regulations, and the court's order directing compliance is amply supported by the record.

II

To implement this order, the court directed the Department "(A) to reinstate payment for services which [they] reduced or terminated in *all*

---

[4] At oral argument, the Attorney General asserted that the state and federal regulations apply only to termination and reduction of services and that the Department's denial of a request for continued acute care services is not covered under the regulations. This theory was not advanced below and it is not necessary to the determination of this appeal. We therefore offer no opinion on the merits of the Attorney General's argument.

cases in which a hearing requested by or on behalf of a beneficiary to contest such reduction or termination is pending as of the date of the writ; (B) unless and until [they] have complied with paragraph (C) below, to continue or reinstate payment for *all* Medi-Cal covered services pending decision in any hearing requested by or on behalf of a beneficiary after the date of this writ from a decision reducing or terminating such services, whether or not the hearing is requested within the time period required under 42 CFR § 431.230(a) or 431.231(c), whichever is applicable . . . ." (Italics added.)

To the extent that reinstatement is ordered in every case defined above, the judgment implementing the writ is overbroad and goes beyond that reasonably necessary to ensure compliance with the federal regulations. We cannot categorically conclude that every recipient who has appealed the Department's intended action, as set forth above, is automatically entitled to the relief ordered. Certainly, any right to aid paid pending the appeal must be limited to that afforded by the federal regulations. Exceptional situations might exist which fall within the broad language of the order, but nevertheless do not entitle a recipient to reinstatement of services under the federal regulations. It is beyond the ability of this court, based on the record, to enumerate these instances. The judgment must be remanded to allow the parties and the trial court to construct an order which would permit reinstatement or continuation of payment for covered services only to the extent permitted under the federal scheme.

The Department's interest in guarding the public purse from unnecessary medical costs and services is valid and should be encouraged. But this cost-consciousness must not take precedent over the legitimate medical needs of the recipient for continued services. The regulations were adopted in part to prevent a hasty or imprudent medical decision to terminate or reduce services lest serious injury to the recipient result. (See *Wickline* v. *State of California* (1986) 192 Cal.App.3d 1630 [239 Cal.Rptr. 810] [a Medi-Cal patient's leg had to be amputated, following complications, after she was denied an extended stay in the hospital as initially requested by her treating physician. Although the reviewing court exonerated the Department, this case presents a graphic example of harm to the recipient when the fiscal "bottom-line" takes precedence over the medical needs of the recipient].) It is true that if a decision adverse to the recipient is upheld following the hearing, the successful recovery of all costs for unwarranted services is limited given that many recipients are indigent. The federal regulators who promulgated these rules were undoubtedly aware of these competing concerns but decided to strike the balance in favor of the recipient. (See *Potter* v. *James, supra,* 499 F.Supp. at p. 610; *Turner* v. *Walsh, supra,* 435 F.Supp. at pp. 715, fn. 10, 716.)

If the Department determines that implementation of the 10-day notice rule is too costly or if literal compliance with the federal regulations will adversely affect the best use of available medical resources in California, for example, acute care beds, the Department should seek changes in the regulations. The Department points out that the typical stay for acute care in California is five to six days. Suppose a patient is in acute care for the authorized period of five days, but on the fourth day the patient's doctors ask Medi-Cal for authorization for an additional day. A 10-day notice would be meaningless because the patient would have had his additional day and would be out of the hospital before the required notice had been completed. However, the judicial system is not the proper forum to debate the wisdom behind the federal regulations. The Department should take its plan to reduce unnecessary cost and administrative inefficiency to the responsible federal agency, where a full hearing can be held at which all interested viewpoints can be debated. If shorter periods of notice are sufficient or if it is desirable to exclude certain services from continued care pending an appeal, the providers of these services and the consumers should be given the opportunity to compute the costs and balance the risks.

The portion of the judgment ordering implementation of parts (A) and (B) of the writ is reversed and remanded for a hearing to construct an order which would permit reinstatement or continuation of payment for covered services only to the extent permitted by the federal scheme. In all other respects, the judgment is affirmed.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied September 25, 1989, and appellants' petition for review by the Supreme Court was denied November 29, 1989.