945 F.2d 1469
 Abel ROSAS, Adrian Rosas; Isaac Rosas, By and Through their
guardian ad litem Margarita Perez; Donna Roraff; Sandra
Marshall, on Behalf of themselves and all others similarly
situated; and Welfare Rights Organization of San Diego,
Inc., Plaintiffs-Appellants,
v.
Linda McMAHON, Director of the Social Services of the State
of California, Defendant-third-party-plaintiff-Appellee,
Louis W. Sullivan, M.D.,* Secretary of
Department of Health and Human Services,
Third-party-defendant-Appellee.
Abel ROSAS, Adrian Rosas; Isaac Rosas, By and Through their
guardian ad litem Margarita Perez; Donna Roraff; Sandra
Marshall, on Behalf of themselves and all others similarly
situated; and Welfare Rights Organization of San Diego,
Inc., Plaintiffs-Appellees,
v.
Linda McMAHON, Director of the Social Services of the State
of California, Defendant-third-party-plaintiff-Appellant,
Louis W. Sullivan, M.D., Secretary of Department of Health
and Human Services, Third-party-defendant-Appellee.
 Nos. 89-15525, 89-15443 and 89-15542.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 15, 1990.
Decided Oct. 4, 1991.
 
 Appeal from the United States District Court for the Northern District of California.
 Anson B. Levitan and Carol R. Bracy, San Diego, Cal., for plaintiffs-appellants.
 Robert D. Newman, Western Center on Law & Poverty, Los Angeles, Cal., for appellees-appellants.
 John Klee, Jr., Deputy Atty. Gen., Oakland, Cal., for appellant-appellee.
 Bruce G. Forrest, U.S. Dept. of Justice, Washington, D.C., for appellee-appellant.
 Before SCHROEDER and CANBY, Circuit Judges, and RONALD S.W. LEW,** District Judge.
 CANBY, Circuit Judge:
 
 
 1
 This class action was brought by California welfare recipients whose benefits were reduced as a result of changes in controlling federal and state statutes. Because of administrative delays in implementing the reductions, many recipients were ultimately subjected not only to a reduction in future monthly benefits, but to recoupment of overpayments received during the period of delay.
 
 
 2
 The issue in dispute is one of timeliness of notice. The governing federal regulation requires agencies that administer Aid to Families with Dependent Children (AFDC) to mail timely notice of an "intended action" to suspend or reduce assistance "at least 10 days before the date of action, that is, that date upon which the action would become effective." 45 CFR § 205.10(a)(4)(i). The notices in this case were mailed after the effective date of reductions in benefit entitlements but at least 10 days before actual reductions in monthly benefit payments to recipients. The district court held that notice had not been timely. 700 F.Supp. 467. We disagree and reverse.[1]
 
 BACKGROUND
 
 3
 AFDC is a cooperative federal-state program to assist poor children and those who care for them. Benefits are based, in part, on the income available to a child from his or her family. In July 1984, Congress amended the AFDC program to increase the kind of income deemed available to a child. For the first time, a child's available income included: (1) income from siblings living with the child, and (2) income from a grandparent living with the child and the child's parent, when that parent was under age 18. See The Deficit Reduction Act of 1984, § 2640(a), P.L. 98-369, 98 Stat. 1145, codified at 42 U.S.C. §§ 602(a)(38) and (39). California enacted these rules into state law on September 26, 1984, and authorized the California Department of Social Services (DSS) to implement the changes "within 120 days." See Calif. Statutes of 1984, Ch. 1447, § 14, codified at Calif. Welf. and Inst. Code § 11008.14 (West Supp. 1991). When implemented, these statutory changes resulted in the reduction or elimination of benefits for many recipients.
 
 
 4
 DSS supervises the administration of the AFDC program in California counties and was responsible for implementing the statutory changes in California. See Cal. Welf. & Inst. §§ 10740-10815 (West 1980). In January 1985, DSS informed California counties that the new sibling and grandparent income rules would become effective February 1, 1985. However, DSS did not supply the counties with directions for sending notices to recipients until February 5, 1985 and did not send implementing instructions until February 13, 1985.
 
 
 5
 The counties gathered information about the incomes of siblings and grandparents living with recipients and then used this information to recalculate benefits. From April 1985 through September 1985, the counties notified some California AFDC recipients that they had been overpaid, pursuant to the changes effective February 1, 1985. The notices also informed the recipients that future benefit checks would be reduced in order to recoup the overpayments.[2] In effect, these recipients faced two benefit reductions. First, benefits were reduced to the level required by the new income calculation rules. Second, benefits were reduced further to recoup overpayments that resulted from the retroactive application of those rules as of February 1. The notices were mailed at least ten days before the recipients received reduced benefit checks, but from two to seven months after the effective date of the statutory reduction in benefit entitlements.
 
 
 6
 AFDC recipients whose benefits were subject to recoupment because of such overpayments joined in a class action against Linda McMahon, Director of the DSS. Under 42 U.S.C. § 1983, the plaintiffs sought: (1) a declaratory judgment that DSS violated federal regulations and due process by failing to give adequate and timely notice to AFDC recipients before implementing the rule changes and by seeking to collect overpayments assessed as a result of that conduct: (2) a permanent injunction barring DSS from recovering any overpayments assessed for the period between February 1985 and the rate of receipt of adequate notice; (3) a refund of all overpayments already collected; and (4) costs and attorneys' fees. DSS filed a third party complaint against the Secretary of the United States Department of Health and Human Services (HHS), to protect DSS from adverse federal action in the event that the district court granted relief against DSS.
 
 
 7
 The district court granted the plaintiffs' summary judgment motion, and declared that DSS had not mailed timely notices of benefit reductions, in violation of 45 CFR §§ 205.10(a)(4)(i) and (iii).[3] The district court interpreted the federal regulations to require "the state to send notice at least ten days before recipients' entitlement is reduced by a change in the law, regardless of the date when the change is reflected in a recipient's monthly check." It also decided that the plaintiffs had received "overpayments," that DSS must recoup all overpayments pursuant to 42 U.S.C. § 602(a)(22), and that DSS had done so. The district court awarded costs and attorneys' fees, but no monetary damages, to the plaintiffs.
 
 DISCUSSION[4]
 
 8
 This appeal turns on what is meant by the federal regulation that requires a state or local agency to mail notice of an "intended action" to reduce assistance "at least 10 days before the date of action, that is, that date upon which the action would become effective."[5] 45 CFR § 205.10(a)(4)(i) (emphasis added). DSS and HHS contend that an action to reduce assistance becomes effective when the benefit payment to the recipient is actually reduced. The plaintiffs contend that an action to reduce assistance becomes effective when the substantive law reduces the benefit entitlement, and that notice should accordingly be given prior to that time.
 
 
 9
 We conclude that DSS and HHS have far the better of the argument. In the first place, the regulation was promulgated by HHS, and the Secretary's interpretation of his own regulation is controlling unless it is plainly erroneous or is inconsistent with the regulation's terms. See Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359, 109 S.Ct. 1835, 1850, 104 L.Ed.2d 351 (1989).
 
 
 10
 [W]hen it is the Secretary's regulation that we are construing, and when there is no claim in this Court that the regulation violates any constitutional or statutory mandate, we are properly hesitant to substitute an alternative reading for the Secretary's unless that alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.
 
 
 11
 Gardebring v. Jenkins, 485 U.S. 415, 430, 108 S.Ct. 1306, 1314, 99 L.Ed.2d 515 (1988) (deferring to an agency interpretation that 45 CFR § 206.10(a)(2)(i) does not require notice to AFDC applicants of a statutory change that reduced benefits).
 
 
 12
 The Secretary's interpretation is not contrary to the plain words of the regulation. The provisions in issue are part of section 205.10, which imposes certain hearing requirements upon state AFDC plans. The "intended action" of which notice must be given may reasonably be considered action by the state agency to reduce the actual payment to a recipient. The date on which the recipient first finds his or her benefit payments reduced may be viewed as the "date upon which the action would become effective."
 
 
 13
 The contrary interpretation of the plaintiffs entails immense practical difficulties. At the time that Congress passed its new legislation, and the state followed with legislation of its own that it made effective on February 1, 1985, DSS knew that families with certain sibling or grandparent income would have their benefits reduced, but it had no way of knowing who those families were. There is no real dispute that the implementation of the new statutory requirements was an extremely difficult and complex administrative task. Notice to every AFDC recipient in California ten days prior to February 1 was not only practically impossible, it would not have notified the recipients of anything more than passage of the statutes. No recipient would know whether his or her own benefits were being reduced, or by how much. Since one of the purposes of the required notice is to permit the recipient to challenge the factual bases for the benefit calculation, see § 205.10(a)(1), it makes sense to notify the recipient only after the agency has made the necessary factual determinations and calculated the level of benefits.
 
 
 14
 Indeed, as DSS and HSS point out, the most common cause of a reduced entitlement to AFDC benefits is a change in the factual circumstances of a recipient. A child moves out of the household, or a parent receives money or obtains employment, and that fact reduces entitlement even though it is not reported to the agency until after it has occurred. The agency simply cannot give notice before the entitlement is reduced. It can and does, however, give notice before the change in circumstances is reflected in the recipient's monthly AFDC payment.[6]
 
 
 15
 The Secretary's regulation was adopted in response to Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), which held that due process was violated by the termination of welfare benefits without notice to the recipient of an opportunity for a hearing. As the district court observed in this case, however, the effect of Goldberg v. Kelly is to preclude the government from reducing or terminating benefits before notice and hearing; the status quo is preserved while the question of entitlements is fought out. But if the government prevails in establishing that the recipient was not entitled to the continued payments, nothing in Goldberg v. Kelly precludes the government from recouping the overpayments, as Congress has directed the states to do. See 42 U.S.C. § 602(a)(22).[7]
 
 
 16
 Nothing in Goldberg v. Kelly limits the state, if it is successful in its mandated hearing (or if no hearing is requested) from recouping excess payments made before the notice was given. The recoupment statute requires the states to recoup from future benefits any "overpayment." Id., § 602(a)(22)(A); see Turner v. McMahon, 830 F.2d 1003, 1007-08 (9th Cir.1987) (section 602(a)(22) authorizes recoupment of AFDC payments made under compulsion of erroneous court order). The implementing regulation defines "overpayment" as a "financial assistance payment received by or for an assistance unit for the payment month which exceeds the amount for which the unit was eligible." 45 C.F.R. § 233.20(a)(13)(i) (emphasis added). Since the statute defines eligibility, it is the effective date of the statute's implementation that places the boundary on recoupment, not the date of the Goldberg v. Kelly notice provided by the notice regulation, § 205.10(a)(4)(i).
 
 
 17
 Here, the notices sent out by the counties under DSS direction clearly preceded any actual withdrawal of benefits. Those notices served the purposes of Goldberg v. Kelly and the notice regulation.[8]
 
 
 18
 Finally, the plaintiffs argue that under the due process clause they were entitled to a "period of grace" before their entitlement to AFDC benefits could be reduced, thus enabling them to escape the burden of recoupment. They rely on cases that entertained such arguments when statutes cut off property rights, even though those cases found no violation of due process. See Texaco, Inc. v. Short, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) (unused mineral interests cut off if claim not filed within two-year grace period); United States v. Locke, 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) (mining interests extinguished after three-year grace period in absence of annual filing of claims). HHS strongly argues that no due process requirement of a "grace period" is appropriate to limit Congress's ability to adjust the level of benefits provided under its AFDC program. We agree."The procedural component of the Due Process Clause does not "impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits." Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971).
 
 
 19
 . . . . .
 
 
 20
 As we have frequently noted: [A] welfare recipient is not deprived of due process when the legislature adjusts benefit levels.... [T]he legislative determination provides all the process that is due."
 
 
 21
 Atkins v. Parker, 472 U.S. 115, 129-30, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985). See also Slaughter v. Levine, 855 F.2d 553, 554 (8th Cir.1988) (per curiam) (Minnesota can implement the new "lump sum" rule reducing AFDC entitlements without advance notice). Congress explicitly reserved the right to "alter, amend, or repeal" any provision of the Social Security Act. 42 U.S.C. § 1304 (1988). We accordingly reject the plaintiffs' due process contention.
 
 
 22
 We do not mean to minimize the hardship caused by the delay in implementing the reduction of entitlements in this case. Plaintiffs are persons in dire economic straits who incurred a liability for overpayments without being aware of the fact. They were unable to adjust to lowered levels of benefits at the time that their entitlements were reduced, and they became subject to recoupment from future (and lower) benefits after notice was given. The sudden reduction in entitlements, the complexity of the reductions, and the administrative delay in implementing them, served neither the recipients nor the public interest well. See Rochester v. Baganz, 479 F.2d 603, 606-07 (3rd Cir.1973) (noting HEW's statement that advance notice of across-the-board reductions was "necessary, or at least appropriate, for the orderly administration of welfare programs"). All that having been said, however, we simply cannot accept the plaintiffs' interpretation of section 205.10(a)(4)(i), which would invalidate the statutory reduction in entitlements until notice was given to the recipients. In dealing with an analogous argument, the Supreme Court stated:
 
 
 23
 The question for us to decide is not whether advance written notice is desirable, or, indeed, whether such notice is necessary to accomplish the purposes of the 1981 statute. The question is whether the pre-existing regulation was intended to forestall the implementation of a congressionally mandated program change until the state agencies provided all AFDC recipients with notice of the change. Although such a rule might well represent sound policy, we do not believe that a fair reading of the text of § 206.10(a)(2)(i) conveys that message.
 
 
 24
 Gardebring v. Jenkins, 485 U.S. 415, 425, 108 S.Ct. 1306, 1312, 99 L.Ed.2d 515 (1988). We conclude that the same observations apply to section 205.10(a)(4)(i) in the present case.
 
 CONCLUSION
 
 25
 The district court erred in granting summary judgment to plaintiffs on the basis of a violation of the notice requirements of 42 CFR § 205.10(a)(4)(i) and (iii), and we reverse. Because we reverse the grant of summary judgment to the plaintiffs, we do not reach the remedies issues raised in plaintiffs' cross-appeal.
 
 
 26
 REVERSED.
 
 
 
 *
 Louis W. Sullivan, M.D., has been substituted for Otis R. Bowen, Fed.R.App.P. 43(c)
 
 
 **
 The Honorable Ronald S.W. Lew, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 The plaintiffs also cross-appeal the district court's denial of monetary relief. Because we reverse the summary judgment in favor of plaintiffs, there is no need to address the cross-appeal
 
 
 [2]
 A state agency administering federal AFDC funds, must "promptly take all necessary steps to correct any overpayment...." 42 U.S.C. § 602(a)(22)(1988). In California, welfare grants can be reduced up to 5% in order to recoup "prior overpayments caused by agency errors." Calif. Welf. and Inst. Code § 11004(c)(West Supp. 1991)
 
 
 [3]
 States must "substantially comply" with federal laws and regulations regarding AFDC in order to receive federal funding for the program. See 42 U.S.C. §§ 603-604; see also King v. Smith, 392 U.S. 309, 316-17, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968)
 
 
 [4]
 We review de novo the grant of summary judgment. See In re Apple Computer Securities Litigation, 886 F.2d 1109, 1112 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990); see also Fed.R.Civ.P. 56(c)
 
 
 [5]
 The regulation also applies to an intended action to discontinue, terminate, or suspend assistance. The regulation provides, in part, that:
 (4) In cases of intended action to discontinue, terminate, suspend or reduce assistance ...
 (i) The State or local agency shall give timely and adequate notice, except as provided for in paragraphs (a)(4)(ii), (iii), or (iv) of this section. Under this requirement:
 (A) "Timely" means that the notice is mailed at least 10 days before the date of action, that is, the date upon which the action would become effective;
 (iii) When changes in either State or Federal law require automatic grant adjustments for classes of recipients, timely notice of such grant adjustments shall be given which shall be "adequate" if it includes a statement of the intended action, the reasons for such intended action, a statement of the specific change in law requiring such action and a statement of the circumstances under which a hearing may be obtained and assistance continued.
 (5) An opportunity for a hearing shall be granted ... to any recipient who is aggrieved by any agency action resulting in suspension, reduction, discontinuance, or termination of assistance.... A hearing need not be granted when either State or Federal law requires automatic grant adjustments for classes of recipients unless the reason for an individual appeal is incorrect grant computation.
 
 
 [45]
 CFR § 205.10(a)(4),(5)
 
 
 [6]
 The cases cited by plaintiffs in which comparable notice requirements were held to be violated are cases where the agencies failed to give notice the requisite number of days before reduction of benefit payments. See Kimble v. Solomon, 599 F.2d 599 (4th Cir.), cert. denied, 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1979) (notice regulations violated when notices sent to Medicaid recipients after the effective date of a curtailment in Medicaid coverage); Rochester v. Baganz, 479 F.2d 603 (3rd Cir.1973) (notice regulations violated when the state implemented an across-the-board 11.7% reduction in AFDC benefits without providing 10 days advance notice to recipients); Budnicki v. Beal, 450 F.Supp. 546, 552 (E.D.Pa.1978) (notice regulations violated when state eliminated orthopedic shoes as a Medicaid benefit without providing advance notice to all Medicaid recipients because "each [recipient] had the right to receive such benefit before the change was effectuated."); Becker v. Toia, 439 F.Supp. 324 (S.D.N.Y.1977) (notice regulations violated when notice given after a new state law required Medicaid recipients to make co-payments for services); see also Becker v. Blum, 464 F.Supp. 152 (S.D.N.Y.1978) (related case)
 
 
 [7]
 Overpayments must be recouped even from recipients who are not responsible for the error. Id
 
 
 [8]
 Plaintiffs argue that in the past the Secretary has indicated that the regulation should be interpreted to permit recipients to adjust to new, lowered levels of assistance, and to prevent overpayments. While those were certainly goals of administration, we do not interpret the remarks cited by plaintiff as suggesting that notice must precede any change in entitlements. For example, when the time requirements for notice were reduced from 15 days to 10 days in 1973, the Department of Health, Education & Welfare made the following statement:
 Opponents of the reduction of the advance notice period from 15 to 10 days expressed concern that a 10-day period was too short for a recipient to decide whether to appeal and to make adjustments to reduced assistance. Many stressed slow mail delivery. Proponents favored the change because it reduced the disproportionate number of overpayments to ineligible individuals, and 10 days is sufficient time for the recipient to assess the correctness of the agency action and request a hearing if he believes the action is erroneous.
 
 
 [38]
 Fed.Reg. 22006 (Aug. 15, 1973)
 The Department also stated in 1982, that:
 In the course of consulting with States over these implementing regulations [for various changes in the AFDC program], there is a related issue which merits brief discussion--the extent to which timely notice must be given and recipients can file for hearings and request that aid be paid pending the hearing decision based on individual case changes.
 The current regulations at 45 CFR 205.10 are unchanged and still apply. When changes in either State or Federal law require automatic grant adjustment for classes of recipients, timely notice must be given at least 10 days prior to the action which includes a statement of the intended action, the reason, a reference to the specific change in law requiring such action and a statement of the circumstances under which a hearing may be obtained and assistance continued.
 
 
 [47]
 Fed.Reg. 5672 (Feb. 5, 1982). Nothing in the two above statements is inconsistent with the Secretary's present interpretation of the regulation